JEFFERS *v.* UNITED STATES

No. 75-1805.   Argued March 21, 1977—Decided June 16, 1977

138

BLACKMUN, J., announced the judgment of the Court and delivered an opinion, in which BURGER, C. J., and POWELL and REHNQUIST, JJ., joined. WHITE, J., filed an opinion concurring·in part in the judgment and dissenting in part, *post*, p. 158. STEVENS, J., filed an opinion dissenting in part

and concurring in the judgment in part, in which BRENNAN, STEWART, and MARSHALL, JJ., joined, *post*, p. 158.

*Stephen C. Bower,* by appointment of the Court, 429 U. S. 916, argued the cause and filed briefs for petitioner.

*William F. Sheehan III* argued the cause for the United States. With him on the brief were *Acting Solicitor General Friedman* and *Assistant Attorney General Thornburgh.*

MR. JUSTICE BLACKMUN announced the judgment of the Court and an opinion in which THE CHIEF JUSTICE, MR. JUSTICE POWELL, and MR. JUSTICE REHNQUIST join.

This case involves the extent of the protection against multiple prosecutions afforded by the Double Jeopardy Clause of the Fifth Amendment, under circumstances in which the defendant *opposes* the Government's efforts to try charges under 21 U. S. C. §§ 846 and 848 in one proceeding. It also raises the question whether § 846 is a lesser included offense of § 848. Finally, it requires further explication of the Court's decision in *Iannelli* v. *United States,* 420 U. S. 770 (1975).

I

A. According to evidence presented at trial, petitioner Garland Jeffers was the head of a highly sophisticated narcotics distribution network that operated in Gary, Ind., from January 1972 to March 1974. The "Family," as the organization was known, originally was formed by Jeffers and five others and was designed to control the local drug traffic in the city of Gary. Petitioner soon became the dominant figure in the organization. He exercised ultimate authority over the substantial revenues derived from the Family's drug sales, extortionate practices, and robberies. He disbursed funds to pay salaries of Family members, commissions of street workers, and incidental expenditures for items such as apartment rental fees, bail bond fees, and automobiles for certain

members. Finally, he maintained a strict and ruthless discipline within the group, beating and shooting members on occasion. The Family typically distributed daily between 1,000 and 2,000 capsules of heroin. This resulted in net daily receipts of about $5,000, exclusive of street commissions. According to what the Court of Appeals stated was "an extremely conservative estimate," [1] petitioner's personal share from the operations exceeded a million dollars over the two-year period.

On March 18, 1974, a federal grand jury for the Northern District of Indiana returned two indictments against petitioner in connection with his role in the Family's operations. The first, No. H–CR–74–56, charged petitioner and nine others with an offense under 21 U. S. C. § 846,[2] by conspiring to distribute both heroin and cocaine during the period between November 1, 1971, and the date of the indictment, in violation of 21 U. S. C. § 841 (a)(1).[3] App. 5–11. The indictment specified, among other things, that the conspiracy was to be accomplished by petitioner's assumption of leadership of the Family organization, by distribution of controlled substances, and by acquisition of substantial sums of money through the distribution of the controlled substances. *Id.,* at 6. The

---

[1] 532 F. 2d 1101, 1105 (CA7 1976).

[2] Section 846 provides:

"Any person who attempts or conspires to commit any offense defined in this subchapter [Control and Enforcement] is punishable by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense, the commission of which was the object of the attempt or conspiracy."

[3] Section 841 (a)(1) provides:

"(a) . . . Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—

"(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance."

Heroin is classified as a Schedule I narcotic drug controlled substance. 21 U. S. C. § 812 (c) (Sch. I)(b)(10); 21 CFR § 1308.11 (c)(11) (1976). Cocaine is a Schedule II narcotic drug controlled substance. 21 U. S. C. § 812 (c)(Sch. II)(a)(4); 21 CFR § 1308.12 (b)(4) (1976).

second indictment, No. H–CR–74–57, charged petitioner alone with a violation of 21 U. S. C. § 848, which prohibits conducting a continuing criminal enterprise to violate the drug laws.[4] Like the first, or conspiracy, indictment, this second indictment charged that petitioner had distributed and possessed with intent to distribute both heroin and cocaine, in violation of § 841 (a)(1), again between November 1, 1971, and the date of the indictment. As required by the statute, the indictment alleged that petitioner had undertaken the distribution "in concert with five or more other people with respect to whom he occupied a position of organizer, supervisor and

---

[4] Section 848 provides, in relevant part:

"(a) . . . (1) Any person who engages in a continuing criminal enterprise shall be sentenced to a term of imprisonment which may not be less than 10 years and which may be up to life imprisonment, to a fine of not more than $100,000, and to the forfeiture prescribed in paragraph (2) . . . .

"(2) Any person who is convicted under paragraph (1) of engaging in a continuing criminal enterprise shall forfeit to the United States—

"(A) the profits obtained by him in such enterprise, and

"(B) any of his interest in, claim against, or property or contractual rights of any kind affording a source of influence over, such enterprise.

"(b) . . . For purposes of subsection (a) of this section, a person is engaged in a continuing criminal enterprise if—

"(1) he violates any provision of this subchapter or subchapter II of this chapter [Import and Export] the punishment for which is a felony, and

"(2) such violation is a part of a continuing series of violations of this subchapter or subchapter II of this chapter—

"(A) which are undertaken by such person in concert with five or more other persons with respect to whom such person occupies a position of organizer, a supervisory position, or any other position of management, and,

"(B) from which such person obtains substantial income or resources.

"(c) . . . In the case of any sentence imposed under this section, imposition or execution of such sentence shall not be suspended, probation shall not be granted, and section 4202 of Title 18 [repealed March 15, 1976, by Pub. L. 94–233, 90 Stat. 219, and replaced by a new § 4205, each relating to eligibility of prisoners for parole] . . . shall not apply."

manager," and that as a result of the distribution and other activity he had obtained substantial income. App. 3–4.

Shortly after the indictments were returned, the Government filed a motion for trial together, requesting that the continuing-criminal-enterprise charge be tried with the general conspiracy charges against petitioner and his nine codefendants. *Id.,* at 12–14. The motion alleged that joinder would be proper under Fed. Rule Crim. Proc. 8, since the offenses charged were of the same or similar character and they were based on the same acts or transactions constituting parts of a common scheme or plan. It also represented that much of the evidence planned for the § 848 trial was based on the same transactions as those involved in the § 846 case. Consequently, it argued that joinder was appropriate and within the court's power pursuant to Fed. Rule Crim. Proc. 13.

The defendants in the § 846 case filed a joint objection to the Government's motion. App. 15–24. Petitioner and his nine codefendants argued generally that joinder would be improper under Fed. Rules Crim. Proc. 8 and 14, since neither the parties nor the charges were the same. The codefendants were particularly concerned about the probable effect of the evidence that would be introduced to support the continuing-criminal-enterprise charge and about the jury's ability to avoid confusing the two cases. Another argument in the objection focused directly on petitioner.[5] It noted that the § 846 indict-

---

[5] The dissenters attempt to undercut the force of petitioner's opposition to trial together by asserting that the motion "gave relatively little emphasis to arguments relating to petitioner alone." *Post,* at 159 n. 4. On the contrary, the memorandum supporting the defendants' motion took pains to point out which objections to trial together were relevant to Jeffers alone. See App. 18, 22–23. Indeed, the last argument before the conclusion stated:

"[I]t is likely that much of the evidence which will be presented in the conspiracy trial does not 'directly' inculpate the defendant, GARLAND JEFFERS, and would, therefore, be inadmissible against him in the 'continuing criminal enterprise' indictment unless a direct link could be established. All of the said overt acts would, however, be

ment charged 17 overt acts, but that petitioner was named in only 10 of them, and was alleged to have participated actively in only 9. Thus, the argument went, it was likely that much of the evidence in the conspiracy trial would not inculpate petitioner and would therefore be inadmissible against him in the continuing-criminal-enterprise trial. Although a severance of the conspiracy charges against petitioner from those against the nine codefendants might have alleviated this problem, petitioner never made such a motion under Rule 14. On May 7, the court denied the Government's motion for trial together and thereby set the stage for petitioner's first trial on the conspiracy charges.

B. The trial on the § 846 indictment took place in June 1974. A jury found petitioner and six of his codefendants guilty. Petitioner received the maximum punishment applicable to him under the statute—15 years in prison, a fine of $25,000, and a 3-year special parole term.[6] The Court of Appeals affirmed the conviction, 520 F. 2d 1256 (CA7 1975), and this Court denied certiorari, 423 U. S. 1066 (1976).[7]

---

admissible, or at least arguably so, in the conspiracy trial. The prejudice to the defendant, JEFFERS, is therefore, imminent and clear." *Id.*, at 22.

In addition to the arguments relating specifically to Jeffers, the memorandum contained a number of points designed to apply equally to all defendants. We see no reason to read it as implicitly excluding Jeffers.

[6] As indicated in n. 2, *supra,* § 846 provides that the sentence for the conspiracy offense shall not exceed the maximum punishment prescribed for the substantive offense the commission of which was the object of the conspiracy. The maximum punishment for a first offender for a violation of § 841 (a)(1), in which a Schedule I or II narcotic drug is the controlled substance in question, is a term of imprisonment of not more than 15 years, a fine of not more than $25,000, or both. § 841 (b)(1)(A).

[7] After this Court's refusal to review the decision on certiorari, petitioner filed a motion under 28 U. S. C. § 2255 for postconviction relief. The District Court denied the motion, the Court of Appeals affirmed, 544 F. 2d 523, and this Court again denied certiorari. 430 U. S. 935 (1977).

While the conspiracy trial and appeal were proceeding, petitioner was filing a series of pretrial motions in the pending criminal-enterprise case. When it appeared that trial was imminent, petitioner filed a motion to dismiss the indictment on the ground that in the conspiracy trial he already had been placed in jeopardy once for the same offense. He argued both that the two indictments arose out of the same transaction, and therefore the second trial should be barred under that theory of double jeopardy, and that the "same evidence" rule of *Blockburger* v. *United States,* 284 U. S. 299 (1932), should bar the second prosecution, since a § 846 conspiracy was a lesser included offense of a § 848 continuing criminal enterprise.[8] To forestall the Government's anticipated waiver argument, petitioner asserted that waiver was impossible, since his objection to trying the two counts together was based on his Sixth Amendment right to a fair trial, and his opposition to the § 848 trial was based on his Fifth Amendment double jeopardy right. A finding of waiver, according to his argument, would amount to penalizing the exercise of one constitutional right by denying another. App. 25–27.

The Government, in its response to the motion to dismiss, asserted that §§ 846 and 848 were separate offenses, and for this reason petitioner would not be placed twice in jeopardy by the second trial.[9] The District Court agreed with this analysis and denied petitioner's motion shortly before the second trial began.

---

[8] In his opposition to the Government's motion for trial together, however, when he joined the argument that the jury would be confused by consolidation, petitioner apparently had argued in favor of construing the statutes to create separate offenses. App. 19. He also joined the argument that "identity of charges" was lacking. *Id.,* at 15.

[9] Language in the Government's memorandum appears to concede that § 846 is a lesser included offense: "Title 21, United States Code, Section 848, requires proof of the elements previously set out in Section 846 but additional elements are required." App. 34. It is unnecessary for present purposes to rely on any such concession.

At the second trial, the jury found petitioner guilty of engaging in a continuing criminal enterprise. Again, he received the maximum sentence for a first offender: life imprisonment and a fine of $100,000. See n. 4, *supra*. The judgment specified that the prison sentence and the fine were "to run consecutive with sentence imposed in H–CR–74–56 [the conspiracy case]." Record, Doc. 105. Thus, at the conclusion of the second trial, petitioner found himself with a life sentence without possibility of probation, parole, or suspension of sentence, and with fines totaling $125,000.[10]

On appeal, the conviction and sentence were upheld. 532 F. 2d 1101 (CA7 1976). The Court of Appeals concluded that § 846 was a lesser included offense of § 848, since the continuing-criminal-enterprise statute expressly required proof that the accused had acted in concert with five or more other persons. In the court's view, this requirement was tantamount to a proof of conspiracy requirement.[11] Construing § 848 to require proof of agreement meant that all the elements of the § 846 offense had to be proved for § 848, in addition to the elements of a supervisory position and the obtaining of substantial income or resources;[12] thus, §§ 846

---

[10] Nothing in the record of Case No. H–CR–74–56 suggests that the $25,000 fine was credited against the $100,000 fine. The record of Case No. H–CR–74–57 expressly indicates that the contrary was true, and we proceed on that assumption.

[11] The District Court actually instructed the jury that the Government might prove that the object of the continuing criminal enterprise was to commit a violation under § 846, the conspiracy statute, rather than to violate § 841 (a)(1). App. 45. The court therefore gave a complete conspiracy charge to the jury. *Id.*, at 46–48. The Government argues that this instruction was erroneous. Without resolving that issue or exploring the implications of the Government's position, we merely note that the District Court's decision to give the instruction reflects. the conceptual closeness of the two statutes.

[12] Section 848 by its terms covers violations of both subchapter I of the Comprehensive Drug Abuse Prevention and Control Act of 1970 and

and 848 satisfied the general test for lesser included offenses. Although the court stated that ordinarily conviction of a lesser included offense would bar a subsequent prosecution for the greater offense, relying on *Gavieres* v. *United States,* 220 U. S. 338 (1911); *Blockburger* v. *United States, supra;* and *Waller* v. *Florida,* 397 U. S. 387 (1970), it read *Iannelli* v. *United States,* 420 U. S. 770 (1975), to create a new double jeopardy rule applicable only to complex statutory crimes.

The two statutes at issue in *Iannelli* were 18 U. S. C. § 371, the general federal conspiracy statute, and 18 U. S. C. § 1955, the statute prohibiting illegal gambling businesses involving five or more persons. Despite language in *Iannelli* seemingly to the contrary, 420 U. S., at 785 n. 17, the Court of Appeals stated that § 371 is a lesser included offense of § 1955. 532 F. 2d, at 1109. The court attached no significance to the fact that § 1955 contains no requirement of action "in concert." It believed that *Iannelli* held that greater and lesser offenses could be punished separately if Congress so intended, and it adopted the same approach to the multiple-prosecution question before it. Finding that Congress, in enacting § 848, was interested in punishing severely those who made a substantial living from drug dealing, and that Congress intended to make § 848 an independent crime, the court concluded that §§ 846 and 848 were not the "same offense" for double jeopardy purposes. It therefore held that the conviction on the first indictment did not bar the prosecution on the second.

In his petition for certiorari, petitioner challenged the Court of Appeals' reading of *Iannelli* and suggested again that § 846 was a lesser included offense of § 848. He also contended that the Double Jeopardy Clause was violated by the prosecution on the greater offense after conviction for the lesser. Finally, he argued that he had not waived the double jeopardy

subchapter II of the Act, while § 846 deals only with subchapter I. The exact counterpart to § 846, however, is § 963 in subchapter II. In this case, no one disputes the fact that only subchapter I is involved.

issue. In addition to these issues, it appears that cumulative fines were imposed on petitioner, which creates a multiple-punishment problem. We granted certiorari. 429 U. S. 815 (1976). We consider first the multiple prosecution, lesser included offense, and waiver points, and then we address the multiple-punishment problem.

## II

A. The Government's principal argument for affirming the judgment of the Court of Appeals is that *Iannelli* controls this case. Like the conspiracy and gambling statutes at issue in *Iannelli*, the conspiracy and continuing-criminal-enterprise statutes at issue here, in the Government's view, create two separate offenses under the "same evidence" test of *Block-burger*. The Government's position is premised on its contention that agreement is not an essential element of the § 848 offense, despite the presence in § 848 (b)(2)(A) of the phrase "in concert with." If five "innocent dupes" each separately acted "in concert with" the ringleader of the continuing criminal enterprise, the Government asserts, the statutory requirement would be satisfied. Brief for United States 23.

If the Government's position were right, this would be a simple case. In our opinion, however, it is not so easy to transfer the *Iannelli* result, reached in the context of two other and different statutes, to this case. In *Iannelli*, the Court specifically noted: "Wharton's Rule applies only to offenses that *require* concerted criminal activity, a plurality of criminal agents." 420 U. S., at 785 (emphasis in original). Elaborating on that point, the Court stated: "The essence of the crime of conspiracy is agreement, . . . an element not contained in the statutory definition of the § 1955 offense." *Id.*, at 785 n. 17. Because of the silence of § 1955 with regard to the necessity of concerted activity, the Court felt constrained to construe the statute to permit the possibility that

the five persons "involved" in the gambling operation might not be acting together.[13] See also *Pinkerton* v. *United States,* 328 U. S. 640, 643 (1946).

The same flexibility does not exist with respect to the continuing-criminal-enterprise statute. Section 848 (b)(2)(A) restricts the definition of the crime to a continuing series of violations undertaken by the accused "in concert with five or more other persons." Clearly, then, a conviction would be impossible unless concerted activity were present. The express "in concert" language in the statutory definition quite plausibly may be read to provide the necessary element of "agreement" found wanting in § 1955. Even if § 848 were read to require individual agreements between the leader of the enterprise and each of the other five necessary participants, enough would be shown to prove a conspiracy. It would be unreasonable to assume that Congress did not mean anything at all when it inserted these critical words in § 848.[14] In the

---

[13] The Court's use of the term "concerted activity" to describe § 1955's requirement that five or more persons must be involved in the gambling business, 420 U. S., at 790, does not indicate a contrary understanding. At that point in the opinion the Court simply was addressing its attention to the reason why § 1955 requires the participation of a significant number of persons in the business. As a practical matter, the group involved often will act in concert. This, however, is not necessarily the case—a fact the Court acknowledged in its *Blockburger* analysis, 420 U. S., at 785 n. 17.

[14] The legislative history, the use that Congress has made of the phrase "in concert" in other statutes, and the plain meaning of that term all support the interpretation suggested for § 848. The House Report on H. R. 18583, which eventually became Pub. L. 91–513, the Comprehensive Drug Abuse Prevention and Control Act of 1970, assumed that the meaning of "in concert" was clear, since it never defined the phrase further. See, e. g., H. R. Rep. No. 91–1444, Pt. 1, p. 50 (1970). Even the writers of additional views did not include an objection to the nondefinition of the term in their criticisms of other aspects of the continuing-criminal-enterprise section of the law. The Senate Report on S. 3246, the Senate version of the same law, did shed some light on the problem. See S. Rep. No. 91–613 (1969). In the Section-by-Section Analysis of the bill, the report states:

"Subsection (f) of this section sets out the criteria which must be met

absence of any indication from the legislative history or else-where to the contrary, the far more likely explanation is that Congress intended the word "concert" to have its common meaning of agreement in a design or plan.    For the purposes of this case, therefore, we assume, *arguendo*, that § 848 does

---

before a defendant can be deemed involved in a continuing criminal enter-prise.    The court must find by a preponderance of evidence that the defendant acted *in concert with or conspired with* at least five other persons engaged in a continuing criminal enterprise involving violations of the act."  *Id.*, at 28  (emphasis added).

The actual language of the bill, however, used the words "in concert with" to cover both concerted action and conspiracy.  *Id.*, at 121.  Thus, it is apparent that the Senate understood the term "in concert" to encom-pass the concept of agreement.

The debates reveal that Congress was concerned with providing severe penalties for professional criminals when it included the continuing-criminal-enterprise section in the statute.  See, *e. g.*, 116 Cong. Rec. 995 (1970)  (remarks of Sen. Dodd); *id.*, at 1181  (remarks of Sen. Thurmond); *id.*, at 33631  (remarks of Cong. Weicker); *id.*, at 33314  (remarks of Cong. Bush).   This concern undercuts the Government's argument that one professional criminal might have "conned" five innocent dupes into working for him, all of them being unaware that the purpose of the work was to conduct an illegal drug business, and none agreeing to do so.

When the phrase "in concert" has been used in other statutes, it has generally connoted cooperative action and agreement.  See, *e. g.*, 2 U. S. C. §§ 434 (b) (13),  441a (a) (7) (B) (i)  (1976 ed.)  (Federal Election Cam-paign Act Amendments of 1976); 7 U. S. C. § 13c (a)  (1970 ed., Supp. V) (Commodity Futures Trading Commission Act of 1974—liability as prin-cipal); 10 U. S. C. § 894 (a)  (Code of Military Justice—mutiny or sedi-tion); 29 U. S. C. §§ 52, 104, 105  (Norris-LaGuardia Act); 46 U. S. C. § 1227  (Merchant Marine Act—agreements with other carriers forbidden); 49 U. S. C. § 322 (b) (1)  (Interstate Commerce Act, Part II—unlawful operation of motor carriers).   This suggests that Congress intended the same words to have the same meaning in § 848.   Even *Iannelli* did not require the word "conspiracy" to be spelled out in the statutory definition, as long as the concept of agreement was included therein.   420 U. S., at 785 n. 17.   Since the word "concert" commonly signifies agreement of two or more persons in a common plan or enterprise, a clearly articulated statement from Congress to the contrary would be necessary before that meaning should be abandoned.

require proof of an agreement among the persons involved in the continuing criminal enterprise.[15]   So construed, § 846 is a lesser included offense of § 848, because § 848 requires proof of every fact necessary to show a violation under § 846 as well as proof of several additional elements.[16]

B. *Brown* v. *Ohio, post,* p. 161, decided today, establishes the general rule that the Double Jeopardy Clause prohibits a State or the Federal Government from trying a defendant for a greater offense after it has convicted him of a lesser included offense.   *Post,* at 168–169.   What lies at the heart of the Double Jeopardy Clause is the prohibition against multiple prosecutions for "the same offense."   See *United States* v. *Wilson,* 420 U. S. 332, 343 (1975).   *Brown* reaffirms the rule that one convicted of the greater offense may not be

---

[15] In connection with this assumption, we note that until the Court of Appeals in this case found that § 846 was a lesser included offense of § 848, no other appellate court had considered the issue.   Indeed, after *Iannelli* it would have been fair to assume that the question was open. The dissenting opinion here is based on the premise that it was beyond dispute that §§ 846 and 848 were so related.   From there, it is easy to reason that the prosecutor should be held accountable for the presumed error that occurred.   Because the premise fails, however, this case cannot be fit so neatly into the niche that would be fashioned by the dissent.   Unless it is plain that two offenses are "the same" for double jeopardy purposes, the parties and the court should be entitled to assume that successive prosecutions are an available option.   This assumption would only be reinforced if the defendant affirmatively asked the court to require two proceedings, and in connection with his request he actively sought postponement of the second trial, as Jeffers did.   Under the circumstances, it is hardly accurate to say, as the dissent does, that Jeffers was being required to give legal advice to the prosecution.   On the contrary, he was simply under an obligation to preserve his double jeopardy point properly, by alerting both court and prosecution to the existence of a complex, unsettled issue.

[16] The two indictments in this case are remarkably similar in detail. It is clear that the identical agreement and transactions over the identical time period were involved in the two cases.   It is also quite clear that none of the participants were "innocent dupes."

subjected to a second prosecution on the lesser offense, since that would be the equivalent of two trials for "the same offense." *Post,* at 168. See *In re Nielsen,* 131 U. S. 176, 187 (1889). Because two offenses are "the same" for double jeopardy purposes unless each requires proof of an additional fact that the other does not, *post,* at 168, it follows that the sequence of the two trials for the greater and the lesser offense is immaterial,[17] and trial on a greater offense after conviction on a lesser ordinarily is just as objectionable under the Double Jeopardy Clause as the reverse order of proceeding.[18] Cf. *Waller* v. *Florida,* 397 U. S., at 390. Contrary to the suggestion of the Court of Appeals, *Iannelli* created no exception to these general jeopardy principles for complex statutory crimes.[19]

The rule established in *Brown,* however, does have some exceptions. One commonly recognized exception is when all the events necessary to the greater crime have not taken place at the time the prosecution for the lesser is begun. See *Brown* v. *Ohio, post,* at 169 n. 7; *Blackledge* v. *Perry,* 417 U. S. 21, 28–29, and n. 7 (1974); *Diaz* v. *United States,* 223 U. S. 442 (1912). See also *Ashe* v. *Swenson,* 397 U. S. 436,

---

[17] It is also possible to argue that a second trial on a greater offense is prohibited by the Double Jeopardy Clause because the defendant is necessarily placed twice in jeopardy on the lesser offense. The risk of conviction on the greater means nothing more than a risk of conviction upon proof of all the elements of the lesser plus proof of the additional elements needed for the greater. *Brown* v. *Ohio, post,* at 167 n. 6, leaves consideration of the implications of this theory for another day.

[18] Any adjustment in punishment for the fact that the defendant already has been punished for the lesser offense is not adequate to cure the injury suffered because of multiple prosecutions, since the double jeopardy problem inheres in the very fact of a second trial for the "same" offense. See *Blackledge* v. *Perry,* 417 U. S. 21, 30–31 (1974); *Price* v. *Georgia,* 398 U. S. 323, 329 (1970).

[19] The Government makes no attempt to defend the Court of Appeals' reading of *Iannelli;* indeed, it states that that court misconstrued *Iannelli.* Brief for United States 22 n. 10.

453 n. 7 (1970) (BRENNAN, J., concurring). This exception may also apply when the facts necessary to the greater were not discovered despite the exercise of due diligence before the first trial. *Ibid.*

If the defendant expressly asks for separate trials on the greater and the lesser offenses, or, in connection with his opposition to trial together, fails to raise the issue that one offense might be a lesser included offense of the other, another exception to the *Brown* rule emerges. This situation is no different from others in which a defendant enjoys protection under the Double Jeopardy Clause, but for one reason or another retrial is not barred. Thus, for example, in the case of a retrial after a successful appeal from a conviction, the concept of continuing jeopardy on the offense for which the defendant was convicted applies, thereby making retrial on that offense permissible. See *Price* v. *Georgia,* 398 U. S. 323 (1970); *Green* v. *United States,* 355 U. S. 184 (1957); *United States* v. *Ball,* 163 U. S. 662 (1896). In a slightly different context, the defendant's right to have the need for a retrial measured by the strict "manifest necessity" standard of *United States* v. *Perez,* 9 Wheat. 579 (1824), does not exist if the mistrial was granted at the defendant's request. *United States* v. *Dinitz,* 424 U. S. 600 (1976). Both the trial after the appeal and the trial after the mistrial are, in a sense, a second prosecution for the same offense, but, in both situations, the policy behind the Double Jeopardy Clause does not require prohibition of the second trial. Similarly, although a defendant is normally entitled to have charges on a greater and a lesser offense resolved in one proceeding, there is no violation of the Double Jeopardy Clause when he elects to have the two offenses tried separately and persuades the trial court to honor his election.[20]

---

[20] The considerations relating to the propriety of a second trial obviously would be much different if any action by the Government contributed to the separate prosecutions on the lesser and greater charges. No hint

C. In this case, trial together of the conspiracy and continuing-criminal-enterprise charges could have taken place without undue prejudice to petitioner's Sixth Amendment right to a fair trial.[21] If the two charges had been tried in óne proceeding, it appears that petitioner would have been entitled to a lesser-included-offense instruction. See Fed. Rule Crim. Proc. 31 (c); *Keeble* v. *United States,* 412 U. S. 205 (1973); cf. *Sansone* v. *United States,* 380 U. S. 343, 349–350

---

of that is present in the case before us, since the Government affirmatively sought trial on the two indictments together.

Unlike the dissenters, we are unwilling to attach any significance to the fact that the grand jury elected to return two indictments against petitioner for the two statutory offenses. As the Court of Appeals' opinion made clear, before this case it was by no means settled law that § 846 was a lesser included offense of § 848. See 532 F. 2d, at 1106–1111. See also Brief for United States 18–32; n. 15, *supra.* Even now, it has not been necessary to settle that issue definitively. See *supra,* at 149–150. If the position reasonably could have been taken that the two statutes described different offenses, it is difficult to ascribe any improper motive to the act of requesting two separate indictments. Furthermore, as noted *supra,* at 142, it was the Government itself that requested a joint trial on the two indictments, which also indicates that no sinister purpose was behind the formal method of proceeding.

[21] Petitioner argues that a finding of waiver is inconsistent with the decision in *Simmons* v. *United States,* 390 U. S. 377, 389–394 (1968), where the Court held that a defendant could not be required to surrender his Fifth Amendment privilege against compulsory self-incrimination in order to assert an arguably valid Fourth Amendment claim. In petitioner's case, however, the alleged Hobson's choice between asserting the Sixth Amendment fair trial right and asserting the Fifth Amendment double jeopardy claim is illusory. Had petitioner asked for a Rule 14 severance from the other defendants, the case might be different. In that event, he would have given the court an opportunity to ensure that prejudicial evidence relating only to other defendants would not have been introduced in his trial. Assuming that a valid Fifth Amendment point was in the background, due to the relationship between §§ 846 and 848, petitioner could have had no complaint about a trial of the two charges together. No such motion, however, was made. Under the circumstances of this case, therefore, no dilemma akin to that in *Simmons* arose.

(1965). If such an instruction had been denied on the ground that § 846 was not a lesser included offense of § 848, petitioner could have preserved his point by proper objection. Nevertheless, petitioner did not adopt that course. Instead, he was solely responsible for the successive prosecutions for the conspiracy offense and the continuing-criminal-enterprise offense.[22] Under the circumstances, we hold that his action deprived him of any right that he might have had against consecutive trials. It follows, therefore, that the Government was entitled to prosecute petitioner for the § 848 offense, and the only issue remaining is that of cumulative punishments upon such prosecution and conviction.

## III

Although both parties, throughout the proceedings, appear to have assumed that no cumulative-punishment problem is present in this case,[23] the imposition of the separate fines

---

[22] Petitioner's position is not strengthened merely because no one raised the multiple-prosecution point during the first proceeding. Since the Government's posture throughout this case has been that §§ 846 and 848 are separate offenses, it could not have been expected on its own to elect between them when its motion for trial together was denied. The right to have both charges resolved in one proceeding, if it exists, was petitioner's; it was therefore his responsibility to bring the issue to the District Court's attention.

[23] Brief for Petitioner 21; Brief for United States 9. See, however, the Government's statement, Tr. of Oral Arg. 36: "[W]e submit, the Double Jeopardy Clause does not bar prosecution for the greater offense, provided, of course, that there was a conviction on the lesser included offense and provided that any punishment that he has suffered on the lesser offense be credited." Different considerations govern the propriety of addressing the cumulative-punishment issue, since petitioner, for obvious reasons, never affirmatively argued that the difference in the two statutes was so great as to authorize separate punishments, and he did argue implicitly that separate trials would be permissible. Even if the two indictments had been tried together, the cumulative-punishment issue would remain.

seems squarely to contradict that assumption.[24] Fines, of course, are treated in the same way as prison sentences for purposes of double jeopardy and multiple-punishment analysis. See *North Carolina* v. *Pearce,* 395 U. S. 711, 718 n. 12 (1969). In this case, since petitioner received the maximum fine applicable to him under § 848, it is necessary to decide whether cumulative punishments are permissible for violations of §§ 846 and 848.

The critical inquiry is whether Congress intended to punish each statutory violation separately. See, *e. g., Prince* v. *United States,* 352 U. S. 322, 327 (1957); *Callanan* v. *United States,* 364 U. S. 587, 594 (1961); *Milanovich* v. *United States,* 365 U. S. 551, 554 (1961). Cf. *Bell* v. *United States,* 349 U. S. 81, 82 (1955). In *Iannelli* v. *United States,* the Court concluded that Congress did intend to punish violations of § 1955 separately from § 371 conspiracy violations. Since the two offenses were different, there was no need to go further. See 420 U. S., at 785–786, nn. 17–18. See also *Gore* v. *United States,* 357 U. S. 386 (1958). If some possibility exists that the two statutory offenses are the "same offense" for double jeopardy purposes, however, it is necessary to examine the problem closely, in order to avoid constitutional multiple-punishment difficulties. See *North Carolina* v. *Pearce,* 395 U. S., at 717; *United States* v. *Wilson,* 420 U. S., at 343.[25]

As petitioner concedes, Reply Brief for Petitioner 3, the first issue to be considered is whether Congress intended to allow cumulative punishment for violations of §§ 846 and 848. We have concluded that it did not, and this again makes it unnecessary to reach the lesser-included-offense issue.

---

[24] For present purposes, since petitioner is not eligible for parole at any time, there is no need to examine the Government's argument that the prison sentences do not present any possibility of cumulative punishment.

[25] Cf. *United States* v. *Gaddis,* 424 U. S. 544, 549 n. 12 (1976) (vacating convictions and sentences under 18 U. S. C. § 2113 (a) in light of conviction under § 2113 (d)).

Section 848 itself reflects a comprehensive penalty structure that leaves little opportunity for pyramiding of penalties from other sections of the Comprehensive Drug Abuse Prevention and Control Act of 1970. Even for a first offender, the statute authorizes a maximum prison sentence of life, a fine of $100,000, and a forfeiture of all profits obtained in the enterprise and of any interest in, claim against, or property or contractual rights of any kind affording a source of influence over, the enterprise. §§ 848 (a)(1), (2). The statute forbids suspension of the imposition or execution of any sentence imposed, the granting of probation, and eligibility for parole. § 848 (c). In addition, § 848 is the only section in the statutes controlling drug abuse that provides for a mandatory minimum sentence. For a first offender, that minimum is 10 years. § 848 (a)(1). A second or subsequent offender must receive a minimum sentence of 20 years, and he is subject to a fine of up to $200,000, as well as the forfeiture described above and the maximum of lifetime imprisonment. *Ibid.* Since every § 848 violation by definition also will involve a series of other felony violations of the Act, see §§ 848 (b)(1), (2), there would have been no point in specifying maximum fines for the § 848 violation if cumulative punishment was to be permitted.

The legislative history of § 848 is inconclusive on the question of cumulative punishment.[26] The policy reasons usually offered to justify separate punishment of conspiracies and

---

[26] The Congress was plainly interested in punishing the professional criminal severely when it passed § 848. See, *e. g.*, S. Rep. No. 91-613, pp. 2, 7 (1969); 116 Cong. Rec. 995, 1181, 1664 (1970) (remarks in Senate debate); *id.*, at 33300-33301, 33304, 33314 (remarks in House debate). Taken alone, this might support an argument for cumulative penalties. The House Report, however, indicates that the penalty scheme of the continuing-criminal-enterprise section was to be separate from the rest of the penalties. H. R. Rep. No. 91-1444, pt. 1, pp. 10-11 (1970). In light of these arguably conflicting conclusions from the legislative history, we see no reason to deviate from the result suggested by the structure of the statute itself.

underlying substantive offenses, however, are inapplicable to §§ 846 and 848. In *Callanan* v. *United States,* 364 U. S., at 593–594, the Court summarized these reasons:

> "[C]ollective criminal agreement—partnership in crime— presents a greater potential threat to the public than individual delicts. Concerted action both increases the likelihood that the criminal object will be successfully attained and decreases the probability that the individuals involved will depart from their path of criminality. Group association for criminal purposes often, if not normally, makes possible the attainment of ends more complex than those which one criminal could accomplish. Nor is the danger of a conspiratorial group limited to the particular end toward which it has embarked. Combination in crime makes more likely the commission of crimes unrelated to the original purpose for which the group was formed. In sum, the danger which a conspiracy generates is not confined to the substantive offense which is the immediate aim of the enterprise."

Accord, *Iannelli* v. *United States,* 420 U. S., at 778.

As this discussion makes clear, the reason for separate penalties for conspiracies lies in the additional dangers posed by concerted activity. Section 848, however, already expressly prohibits this kind of conduct. Thus, there is little legislative need to further this admittedly important interest by authorizing consecutive penalties from the conspiracy statute.

Our conclusion that Congress did not intend to impose cumulative penalties under §§ 846 and 848 is of minor significance in this particular case. Since the Government had the right to try petitioner on the § 848 indictment, the court had the power to sentence him to whatever penalty was authorized by that statute. It had no power, however, to impose on him a fine greater than the maximum permitted by § 848. Thus, if petitioner received a total of $125,000 in fines

158

on the two convictions, as the record indicates, he is entitled to have the fine imposed at the second trial reduced so that the two fines together do not exceed $100,000.

The judgment of the Court of Appeals, accordingly, is affirmed in part and vacated in part, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

MR. JUSTICE WHITE, concurring in the judgment in part and dissenting in part.

Because I agree with the United States that *Iannelli* v. *United States,* 420 U. S. 770 (1975), controls this case, I for that reason concur in the judgment of the Court with respect to petitioner's conviction. For the same reason and because the conspiracy proved was not used to establish the continuing criminal enterprise charged, I dissent from the Court's judgment with respect to the fines and from Part III of the plurality's opinion.

MR. JUSTICE STEVENS, with whom MR. JUSTICE BRENNAN, MR. JUSTICE STEWART, and MR. JUSTICE MARSHALL join, dissenting in part, and concurring in the judgment in part.

There is nothing novel about the rule that a defendant may not be tried for a greater offense after conviction of a lesser included offense. It can be traced back to Blackstone, and "has been this Court's understanding of the Double Jeopardy Clause at least since *In re Nielsen*[, 131 U. S. 176,] was decided in 1889," *Brown* v. *Ohio, post,* at 168.[1] I would not permit the prosecutor to claim ignorance of this ancient rule, or to evade it by arguing that the defendant failed to advise him of its existence or its applicability.

---

[1] As the Court notes in *Brown, Nielsen* cites an 1833 New Jersey case; that case in turn quotes Blackstone. *State* v. *Cooper,* 13 N. J. L. 361, 375. See 4 W. Blackstone, Commentaries *336.

The defendant surely cannot be held responsible for the fact that two separate indictments were returned,[2] or for the fact that other defendants were named in the earlier indictment, or for the fact that the Government elected to proceed to trial first on the lesser charge.[3] The other defendants had valid objections to the Government's motion to consolidate the two cases for trial.[4] Most trial lawyers will be startled to learn that a rather routine joint opposition to that motion to consolidate has resulted in the loss[5] of what this Court used to regard as "a vital safeguard in our society, one that

---

[2] The plurality implies that the result in this case would be different "if any action by the Government contributed to the separate prosecutions on the lesser and greater charges." *Ante,* at 152 n. 20. I wonder how the grand jury happened to return two separate indictments.

[3] The Government retained the alternative of trying petitioner on both charges at once, while trying the other defendants separately for conspiracy. The prosecutor never attempted this course, and defense counsel—not having had an opportunity to read today's plurality opinion—had no reason to believe he had a duty to suggest it. Until today it has never been the function of the defense to give legal advice to the prosecutor.

[4] When the Government attempted to obtain a joint trial on all the charges against all the defendants, the attorney representing all the defendants resisted the Government motion. He did so largely because of the possible prejudice to petitioner's codefendants, and gave relatively little emphasis to arguments relating to petitioner alone. See *ante,* at 142–143, n. 5.

[5] It is quite clear from the plurality opinion that petitioner has been denied his constitutional rights. As that opinion states, it is "the general rule that the Double Jeopardy Clause prohibits a State or the Federal Government from trying a defendant for a greater offense after it has convicted him of a lesser included offense." *Ante,* at 150. And, as the plurality also demonstrates, that is precisely what happened here. *Ante,* at 147–150. Two additional facts, also noted by the plurality, clinch the double jeopardy claim: (1) petitioner was not only twice tried, but also twice punished for the same offense, *ante,* at 154–158; and (2) the instructions at the second trial required petitioner to defend against the lesser charge for a second time, *ante,* at 145 n. 11.

was dearly won and one that should continue to be highly valued," *Green* v. *United States,* 355 U. S. 184, 198.[6] See *United States* v. *Alford,* 516 F. 2d 941, 945 n. 1 (CA5 1975).

It is ironic that, while the State's duty to give advice to an accused is contracting, see, *e. g., Oregon* v. *Mathiason,* 429 U. S. 492, a new requirement is emerging that the accused, in order to preserve a constitutional right, must inform the prosecution about the legal consequences of its acts. Even the desirability of extending Mr. Jeffers' incarceration does not justify this unique decision.[7]

While I concur in the judgment to the extent that it vacates the cumulative fines, I respectfully dissent from the affirmance of the conviction.

---

[6] The following sentence by Mr. Justice Black is also worth remembering: "If such great constitutional protections are given a narrow, grudging application, they are deprived of much of their significance." *Green,* 355 U. S., at 198.

[7] The Court's disposition is especially troubling because eight Justices agree that petitioner's constitutional right was violated and only four are persuaded that he waived his double jeopardy objection.