HERSEY, Judge.
The state appeals from an order dismissing one count of an Information filed against appellee. The basis for dismissal was application of the doctrine of collateral estoppel. We reverse.
This, apparently, is a case of first impression and presents a very troublesome issue. In order to gain an insight into that issue we consider first the procedural framework and then the factual background which gave rise to this problem at the trial court level.
The appellee was charged by Information with aggravated battery by use of a firearm (in Count I), possession of a firearm by a convicted felon (in Count II), and aggravated assault by use of a firearm (in Count III). Prior to trial, appellee filed a motion to sever Count II on the grounds that proof of a prior felony conviction, which was an essential element of the Count II offense, would be prejudicial to him in the trial of the other counts. The trial court granted this motion to sever.
The case went to trial on Counts I and III. Prior to reaching a verdict, the jury asked the following question: “[D]oes the defendant have to have a gun to be guilty of the information charge of aggravated assault, also aggravated battery.” Because the Information charged aggravated battery and aggravated assault by use of a deadly weapon, a firearm, the trial court instructed the jury that it would have to find that appellee used such a deadly weapon. The jury then returned a verdict of guilty of the lesser included offenses of battery and assault.
Appellee thereafter filed a motion to dismiss Count II of the Information on the basis that, by its verdict, the jury had determined that he did not possess a firearm on the evening in question, reasoning that under the principle of collateral estoppel, Count II should be dismissed. The trial court agreed and entered the order now on appeal.
The principle of collateral estoppel mandates that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit. This rule of law is applicable in criminal cases as it is embodied in the Fifth Amendment guarantee against double jeopardy. Thus, when there is a previous general verdict, as is usually the case in criminal prosecutions, the court is required to “examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration.” Ashe v. Swenson, 397 U.S. 436, 444, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469 (1970), quoting from Mayers & Yarbrough, Bis Vexari: New Trials and Successive Prosecutions, 74 Harv.L.Rev. 1, 38-39.
*1129 Appellee’s position here is that the issue of whether he possessed a firearm (an ultimate fact) was determined in his favor by the jury verdict in the first trial. Specifically, he argues that the jury verdict finding him guilty of battery and assault rather than battery with a deadly weapon (firearm) and assault with a deadly weapon (firearm) was based upon a determination that he did not have a firearm in his possession. This is evidenced, appellee maintains, by the jury questioning whether he had to have a gun to be guilty as charged in the Information. According to appellee, then, he cannot be tried for possession of a firearm because the issue of possession was previously determined in his favor and therefore the trial court’s ruling is correct.
To test appellee’s theory we review the evidentiary aspects of the “prior proceeding,” in this instance, the jury trial on Counts I and III.
The events which resulted in charges being filed against appellee began with a domestic dispute between Joe Harrison and Mary Smith. Harrison testified he had been living with Mary Smith for about six months and on May 5, 1980 he had decided to move out of her house. Before leaving, he got into an argument with Mary and a friend of hers, Debbie Woody. According to Mary and Debbie, Harrison hit Debbie, knocking her from a kitchen stool. As a result, Debbie Woody called appellee, who was a friend, and the police. The law enforcement officers arrived and remained at Mary Smith’s residence until Joe Harrison left. Harrison then returned to the residence to pick up his truck after arranging to have a friend, Margaret Raines, accompany him.
Upon arriving home, Harrison realized that he did not have his key so he went to a neighbor’s house to get the spare key. Harrison testified that while waiting at the neighbor’s door, he heard someone call his name. He turned, and saw appellee standing behind him with an arm raised in the air with a gun in his hand. According to Harrison, appellee was bringing his arm downwards to strike him. The neighbor testified that he had turned to go into the house and saw no one standing behind Harrison. At that point, according to Harrison, appellee jumped on him and pistol-whipped him. Harrison described the gun as a .32 or .38 chrome-plated revolver. He also testified that after beating him with the gun, appellee beat him with his fists. No one directly witnessed the fight or saw a gun. The treating physician stated that Harrison’s injuries were consistent with being hit with a blunt object, a gun or a ring.
Appellee admitted that he was involved in a fight with Harrison, but denied using or being in possession of a weapon, stating, however, that he was wearing rings on both of his hands. Appellee explained that a gun cleaning kit found in his car belonged to his wife and was probably left there from a time when he drove her to the shooting range. Mary Smith, who was with appellee when he went to Harrison’s residence, testified that she did not see a weapon in appellee’s possession at all throughout the evening.
The victim testified that immediately pri- or to being attacked by appellee he saw a gun in appellee’s right hand. Appellee then started hitting victim with the barrel of the gun. According to the victim, appellee jammed the barrel of the gun under his (victim’s) chin. The victim testified that, from looking at the barrel, he could identify the gun as a revolver. He further described the firearm as chrome-plated with a short barrel. Thus, there was more than sufficient evidence from which the jury could have concluded that appellee was in possession of a gun, but there was also evidence to support appellee’s contentions.
Failure of the jury to convict appellee of the gun-related offenses charged strongly suggests that they did not believe the testimony of certain witnesses. In any event, the jury clearly was presented with the issue of .whether appellee used a gun in perpetrating the assault and battery. It seems to us by necessary implication that the jury considered, and rejected, appellee’s possession of a gun. This is so because a rational jury, on these facts, could not have separated the two issues.
Further, we do not ascribe to the state’s view that the jury exercised its pardon *1130 power or acted out of compassion or through compromise, in the absence of a scintilla of evidence that the verdict resulted from one of those factors.
Without more, then, collateral estoppel would bar appellee’s prosecution on Count II. No question of jeopardy attaching has been or could be raised on these facts. See, e.g., State v. McCord, 402 So.2d 1147 (Fla.1981).
There remains for our consideration the state’s alternative position on appeal, to the effect that appellee is estopped from claiming application of the doctrine of collateral estoppel by his own actions. Put simply, appellee moved for severance of Count II in order to avoid prejudice at trial. He should not now escape prosecution on that count on the double jeopardy principle embodied in collateral estoppel. He, himself, should be estopped since jeopardy exists twice only because of his own actions.
We have been unable to find convincing authority on the precise issue involved here. However, in the closely related area of double jeopardy, the Supreme Court of the United States has applied estoppel under procedural facts similar to those with which we are confronted.
In Jeffers v. United States, 432 U.S. 137, 97 S.Ct. 2207, 53 L.Ed.2d 168 (1977), the Supreme Court held that although a defendant is normally entitled to have charges on greater and lesser offenses resolved in one proceeding, Brown v. Ohio, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977), there is no violation of the double jeopardy clause when he elects to have the two offenses tried separately and persuades the trial court to honor his election. Applying Jeffers to the instant case, the state argues that since the offenses were properly joined but appellee moved and persuaded the trial court to sever them, there is no violation of the double jeopardy clause to invoke the principle of collateral estoppel.
The charges against defendant were in fact properly joined because they were based on the same transaction or connected acts or transactions. Fla.R.Crim.P. 3.150(a). Thus appellee’s actions brought about the present situation involving the question of collateral estoppel. By logical extension Jeffers is authority for our present holding that appellee cannot now claim the benefit of collateral estoppel.
We are not unmindful of the argument that our holding may be said to penalize the appellee for the exercise of one constitutional right by denying another but, as in Jeffers, supra, we accept the logic but deny the equity of that argument here.
Accordingly, we reverse the order of the trial court dismissing Count II of the Information and remand for further appropriate proceedings.
Because we proceed by logical extension of a principle gleaned from federal precedent, necessitated by the virtual vacuum in Florida law on the point involved, we certify the following question to our supreme court as one of great public interest:
When a defendant successfully seeks severance for trial of one of several counts against him, will he be estopped later to assert collateral estoppel as a bar to prosecution on that count where it otherwise would be available.
REVERSED, REMANDED and QUESTION CERTIFIED.
LETTS, C. J., and ANSTEAD, J., concur.