UNITED STATES of America, Plaintiff,

v.

Marcus LACEY, Defendant.

No. 89–CR–80352–DT.

United States District Court,
E.D. Michigan, S.D.

Jan. 29, 1992.

Karl R. Overman, Asst. U.S. Atty., Detroit, Mich., for plaintiff.

Richard J. Amberg Jr., Waterford, Mich., for defendant.

## MEMORANDUM OPINION AND ORDER

ZATKOFF, District Judge.

### I.

This matter is before the Court on defendant Marcus Lacey's motion to dismiss the charges against him on double jeopardy grounds.

On December 10, 1991, this Court held an evidentiary hearing to resolve the issues raised in defendant's motion. Therein, two witnesses testified: DEA Agent Brian Haltom and FBI Agent Robert Carter.

Having presided over the hearing and after reviewing the motion, response, post-hearing briefs and file, this Court holds that for reasons discussed below, defendant's motion is denied.

### II.

During the evidentiary hearing, this Court had an opportunity to consider, and did consider, each witness's ability and opportunity to observe the facts and events to which he testified; each witness's memory and manner while testifying; each witness's interest, bias or prejudice; and the reasonableness of each witness's testimony considered in light of all the evidence admitted. Based on these considerations, this Court finds no reason to question the credi-

bility, veracity and believability of DEA Agent Haltom's and FBI Agent Carter's testimony.

## III.

In 1989, defendant pled guilty to a drug conspiracy charge, 21 U.S.C. §§ 841(a)(1) and 846, before the Honorable Horace Gilmore. That charge arose following a May 2, 1989 "buy/bust" at defendant's Detroit home. Judgment was entered against defendant on October 17, 1989.

According to the testimony of Agent Haltom, the instant indictment and charge resulted from information obtained in December of 1990. Following the discovery of a drug pipeline between Houston and Detroit, and subsequent arrests, defendant was identified by photographs as "Diamond," an individual allegedly receiving multi-kilo shipments of cocaine from Houston.

## IV.

■ Once a defendant advances a nonfrivolous claim of double jeopardy, the burden shifts to the government to show, by a preponderance of the evidence, that the conspiracies alleged in the two indictments are in fact separate. *United States v. Jabara,* 644 F.2d 574, 576–77 (6th Cir.1981). Defendant has met his initial burden of production. This Court must thus determine whether the government has done likewise in light of *Grady v. Corbin,* 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990).

In *Grady,* the United States Supreme Court held that trial courts must make two inquiries in analyzing double jeopardy claims with respect to subsequent prosecutions. First, the court must apply the traditional test as outlined in *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). *Blockburger* insures that a subsequent prosecution requires proof of a fact that the other did not. If application of this test reveals that the offenses have identical statutory elements or that one is a lesser included offense of the other, the latter prosecution is barred. In the instant matter, *Blockburger* is not implicated since the government is alleging two separate conspiracies.

The second inquiry under *Grady* is the "same conduct" test. Here, the court must determine if, to establish an essential element of the prosecution under scrutiny, the government will attempt to prove conduct that constitutes an offense for which defendant has already been prosecuted. *Grady,* 110 S.Ct. at 2093. If so, the subsequent prosecution is similarly foreclosed.

■ Like the conduct to which defendant previously pleaded guilty, the conduct which the government seeks to prove in this action is an illegal agreement to possess and distribute controlled substances. The government is thus obliged to show, by a preponderance of the evidence, that the two alleged conspiracies were separate and distinct agreements. The Sixth Circuit applies a "totality of the circumstances" test in making this determination. *United States v. Sinito,* 723 F.2d 1250, 1256 (6th Cir.1983). The trial court, in so doing, must consider the elements of (1) time; (2) persons acting as co-conspirators; (3) the statutory offenses charged in the indictments; (4) the overt acts charged by the government or any other description of the offenses charged which indicates the nature and scope of the activity which the government sought to punish in each case; and (5) places where the events alleged as part of the conspiracy took place. *Id.*

### A. Time

■ Defendant's first indictment indicates that the time frame of that conspiracy was May 1 to May 2, 1989. The present indictment sets forth a period between June of 1987 and March of 1991. Obviously, the present indictment overlaps the first. This alone, however, is not determinative of a single conspiracy. In *United States v. Inmon,* 594 F.2d 352 (3rd Cir. 1979), *cert. denied,* 444 U.S. 859, 100 S.Ct. 121, 62 L.Ed.2d 79 (1979), the time period in the first indictment completely subsumed the time period in the second. Yet, in finding two conspiracies, the court stated that "[t]ime frames and personnel can over-

lap in separate criminal agreements. In a metropolitan area ..., it is possible for more than one scheme involving the distribution of [drugs] to exist." *Id.* at 354.

### B. Persons Acting As Co–Conspirators

As far as overlap in defendants, only Mr. Lacey is named in both indictments. But, even in cases where the overlap is considerable, courts will generally find no double jeopardy bar. Indeed, in *United States v. MacDougall*, 790 F.2d 1135, 1145 (4th Cir. 1986), twelve persons were named in succeeding conspiracy prosecutions. The court nonetheless found that the two were separate and distinct offenses.

### C. Statutory Offenses

In both the present and prior indictments, defendant is charged with violating 21 U.S.C. § 846. The instant indictment, however, embraces not only a conspiracy to possess and distribute cocaine, but also cocaine base and marijuana.

### D. Overt Acts

A comparison of the overt acts charged by the government is the most significant factor for courts to consider. *In re: Grand Jury Proceedings*, 797 F.2d 1377, 1383 (6th Cir.1986). According to the testimony of Agent Carter, defendant's first indictment arose out of a single "buy/bust" investigation which had originated in Cleveland. Defendant's second indictment, however, pertains to the movement of illegal drugs between Houston and Detroit.

### E. Places Where Events Alleged Took Place

As previously noted, the first conspiracy involved Cleveland and Detroit, while the second involved Detroit and Houston.

### F. Conclusion

In light of the factors discussed above, this Court holds that the present charge relates to a sufficiently distinct set of circumstances so as to compel the conclusion that the government is not seeking to prosecute defendant for the "same conduct."[1] Accordingly, the government may proceed against defendant on the instant charges.

### V.

For all the reasons set forth above, defendant's motion is DENIED.

IT IS SO ORDERED.

---

1. Double jeopardy would not bar the instant prosecution even if this Court were to hold otherwise. In *Jeffers v. United States*, 432 U.S. 137, 97 S.Ct. 2207, 53 L.Ed.2d 168 (1972), the United States Supreme Court acknowledged an exception to prosecuting a defendant for a greater offense after a conviction or acquittal of a lesser offense if "the facts necessary to the greater were not discovered despite the exercise of due diligence before the first trial." *Id.* at 152, 97 S.Ct. at 2217. Here, the facts leading to defendant's present indictment and charge were not and could not have been ascertained until his identification in December of 1990. This was almost 14 months after judgment was entered against defendant on the first indictment.