Thomas Earl HENDERSON, Jr., et al.,
Plaintiffs-Appellants,

v.

FORT WORTH INDEPENDENT
SCHOOL DISTRICT et al.,
Defendants-Appellees.

No. 77-2839
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

June 12, 1978.

Rehearing En Banc Granted
Aug. 14, 1978.

---

* Rule 18, 5 Cir.; see *Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.*, 5 Cir., 1970, 431 F.2d 409, Part I.

Art Brender, Fort Worth, Tex., for plaintiffs-appellants.

Cecil A. Morgan, David B. Owen, Fort Worth, Tex., for defendants-appellees.

Before RONEY, GEE and FAY, Circuit Judges.

RONEY, Circuit Judge:

This case comes before us for the second time. In our earlier decision we held it to be a denial of equal protection for a Texas statute to require that a candidate for the Fort Worth school board must have been a qualified voter in the district for a period of three years. We remanded the case to the district court for entry of an order consistent with that decision. *Henderson v. Fort Worth Independent School Dist.*, 526 F.2d 286 (5th Cir. 1976). The district court en-

tered an order in compliance with this Court's order, but denied plaintiffs' motion for attorney's fees after an evidentiary hearing. The sole question before us now is whether the district court abused its discretion in denying attorney's fees. We affirm.

After this Court's remand, but before the district court took up the issue of attorney's fees, the Civil Rights Attorney's Fees Awards Act of 1976 became law. 42 U.S. C.A. § 1988. The district court held the Act applied, but denied plaintiffs counsel fees because, among other things, "to hold the Fort Worth Independent School District accountable for attorney's fees resulting from the honest pursuit and defense of their statutory duty would in this Court's discretion be not only inappropriate but unjust."

■ In enacting the Civil Rights Attorney's Fees Awards Act of 1976, Congress sought "to remedy anomalous gaps in our civil rights laws created by the United States Supreme Court's recent decision in *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240 [95 S.Ct. 1612, 44 L.Ed.2d 141] (1975)." S.Rep.No.94–1011, 94th Cong. 2d Sess. 5, *reprinted in* [1976] U.S.Code Cong. & Admin.News, pp. 5908, 5909. In *Alyeska* the Court of Appeals for the District of Columbia, without statutory authorization, awarded attorney's fees to plaintiffs on the theory that they were performing the services of a "private attorney general." The Supreme Court reversed, ruling that Congress alone has authority to specify when attorney's fees should be awarded in statutory actions. Consequently, after *Alyeska* a federal court could award attorney's fees to a prevailing litigant in actions brought under Title II or VII of the Civil Rights Act of 1964, 42 U.S.C.A. §§ 2000a–3(b), 2000e–5(k), both of which specifically provide for attorney's fees, but could not allow fees in similar actions brought under 42 U.S.C.A. §§ 1981 or 1983. Congress responded to this anomaly by amending 42 U.S.C.A. § 1988 to provide:

In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of [title 42] . . . the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs.

The legislative history of the Act makes clear that Congress intended that a prevailing plaintiff claiming under § 1988 "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." S.Rep.No.94–1011, 94th Cong. 2d Sess. 5, *reprinted in* [1976] U.S. Code Cong. & Admin.News, pp. 5908, 5912, *quoting Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 402, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968). *Newman* had first enunciated this standard for the allowance of attorney's fees in a case arising under Title II of the Civil Rights Act of 1964. The standard has since been found applicable to attorney's fee claims in Title VII cases. *See Albemarle Paper Co. v. Moody*, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975).

■ Applying this standard to the circumstances of this case, the district court did not abuse its discretion in holding that an award of counsel fees against the school district would be unjust.

■ First, it is apparent from the legislative history of the Civil Rights Attorney's Fees Awards Act of 1976 that Congress' overriding concern was to encourage individuals, particularly members of racial minorities, to seek relief from invidious discrimination based on race, sex, religion, wealth, and other inherently offensive criteria. *See Brown v. Culpepper*, 559 F.2d 274, 278 (5th Cir. 1977); S.Rep.No.94–1011, 94th Cong. 2d Sess. 5, *reprinted in* [1976] U.S.Code Cong. & Admin.News, p. 5908, 122 Cong.Rec. ¶ 1705 (daily ed. Sept. 29, 1976) (remarks of Sen. Kennedy). When enacted in 1925, the Texas statute was viewed by the Texas Legislature as an efficient device for ensuring that persons seeking a school board position be familiar with the workings of the board and the concerns of the district. *Henderson v. Fort Worth Independent School Dist.*, 526 F.2d 286 (5th Cir. 1976). There is no indication in the record

that the legislation was inspired by a desire to discriminate against any race, sex, or religion, or any other homogeneous segment of society, or that it in fact did so discriminate. Thus, plaintiffs cannot avail themselves of the weighty argument that they are the type of plaintiff for which Congress demonstrated a particular solicitude in enacting § 1988.

Second, the school district's enforcement of the 3-year "qualified voter" requirement was not voluntary. It was mandated by the Texas Legislature under a 50-year-old statute which had never been constitutionally questioned before this case. Although the district court originally upheld the statute as a constitutional exercise of the state's power to prescribe minimal candidate qualifications, when this Court declared the statute unconstitutional, the school district ceased to comply with it, pursued no appeal, and placed plaintiff Henderson's name on the ballot in the following school board election.

Third, the financial burden of a fee award in this case would fall on people who participated in no discriminatory act, the taxpayers in the Fort Worth school district. Defendants' unconstitutional conduct was statutorily required by the elected representatives of all Texas voters, of which the members of this district were a very small part.

At first glance, our consideration of the inculpable nature of defendants' conduct would appear to conflict with this Court's recent observation that "[i]n Title II and Title VII cases . . . the defendant's conduct, be it negligent or intentional, in good faith or bad, is irrelevant to an award of attorneys' fees." *Brown v. Culpepper,* 559 F.2d 274, 278 (5th Cir. 1977). The *Brown* Court applied this reasoning to a case brought under the equal protection clause of the fourteenth amendment and 42 U.S.C.A. §§ 1981, 1983, holding that the district court erred when it denied plaintiffs' § 1988 claim for attorney's fees on the ground that defendants' racial and sexual discrimination had been unintentional. *Brown,* however, is distinguishable from the instant case.

*Brown* and the Titles II and VII cases upon which it relied involved distinctions based on virtually immutable personal characteristics, the most inherently offensive type of discrimination. A defendant may properly be held to account for his accuser's attorney's fees when his actions are found to discriminate invidiously, albeit unintentionally and in good faith, against a discreet and homogeneous group, capable of identification by reference to common ethnic, sexual, economic, or other personal characteristics identified by Congress through civil rights legislation as an illegal basis of discrimination. Generally, discrimination against such groups is discoverable and can be unilaterally remedied by the discriminator. The policies commending a liberal attorney's fee standard for successful plaintiffs in civil rights litigation are not diminished simply because the suit seeks to correct unintentional rather than intentional discrimination.

In this case, however, the statute intentionally discriminated between those who had been qualified voters in the school district for three years and those who had not. The requirement operated blindly against all homogeneous classes of people; whites were affected the same as blacks, females the same as males. There was no unintentional discriminatory effect. In enforcing the requirement, defendants acted pursuant to a statute designed by the Texas Legislature to accomplish a legitimate purpose: to ensure that all candidates for positions on the school board have minimal qualifications. The state has power, derived from the tenth amendment, to prescribe reasonable qualifications for candidates for public office, such as citizenship, age, and residency requirements. In other words, the state may legitimately discriminate between school board hopefuls on the basis of certain neutral criteria, excluding from the ballot those who cannot meet the prescribed qualifications.

In our earlier decision we determined that the line drawn by the 3-year

"qualified voter" requirement went beyond the necessary power of the state to prescribe minimal candidate qualifications permitted by the Constitution. Until this Court's pronouncement, however, the requirement was an apparently valid exercise of the state's admitted power to legislate in the area of candidate qualifications, and defendants were not at liberty to ignore the legislature's mandate. That defendants' actions were required of them by their constituting authority is relevant to a determination that it would be unjust to hold them accountable for plaintiffs' attorney's fees. *See Chastang v. Flynn & Emrich Co.*, 541 F.2d 1040 (4th Cir. 1976).

The asserted infirmity was virtually impossible for defendants to ascertain and correct, short of litigation or a change in legislation. Plaintiffs made no attempt to change the law in the legislative process.

We cannot say the district court abused its discretion in holding it would be unjust to award attorney's fees against defendants whose actions were taken under a Texas statute which did not discriminate on the basis of race, sex, or other similar classification and which defendants legitimately believed to be valid, were duty-bound to enforce, and were powerless to alter, and where plaintiffs made no attempt to correct the law in the legislative process. This was not a class action, so there are no class member considerations involved.

In denying plaintiffs' request for attorney's fees, the district court observed that defendants had been "guilty of no bad faith or undue obstinacy in the defense of this matter." Seizing upon this observation, plaintiffs urge that the court in effect applied the "bad faith defense" standard expressly rejected by the Supreme Court in *Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. at 401, 88 S.Ct. 964. A reading in context of the focus of the district court's bad faith comments clearly indicates, however, that it was not suggesting that plaintiffs could prevail only upon a showing of bad faith. After stating that it would not hesitate to award attorney's fees against defendants had they proceeded in bad faith, the court went on to set the bad faith comments in proper perspective:

> This Court comments on the lack of bad faith simply for purposes of clarity and perspective, and in full awareness that there is no bad faith standard necessary under 42 U.S.C. 1988, and that under the statute an award of attorney's fees may be made even when there is a complete absence of bad faith.

■ Plaintiffs last argue that their attorney's fees were recoverable under 42 U.S.C.A. § 1973*l*(e). Also passed in reaction to *Alyeska,* § 1973*l*(e) provides:

> In any action or proceeding to enforce the voting guarantees of the fourteenth or fifteenth amendment, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

Here plaintiffs sought to enforce their equal protection right to run for a position on the Fort Worth school board. Although the Texas statute's impact on the rights of voters did actuate strict scrutiny review by this Court in the first appeal of this case, *Henderson v. Fort Worth Independent School Dist.*, 526 F.2d at 291–292, plaintiffs did not bring this action to "enforce the voting guarantees of the fourteenth or fifteenth amendment," but to enforce their equal protection right to run for public office. Thus, even if plaintiffs had properly raised § 1973*l*(e) in the district court, which they did not, it is inapplicable to the instant case.

In sum, the record factually supports the district court's finding of special circumstances to deny plaintiffs' request for counsel fees. This appellate court therefore cannot reverse under the abuse of discretion standard of review. The standard of review being what it is, this case does not hold that it would have been an abuse of discretion to award attorney's fees, only that it was not an abuse of discretion to deny them.

AFFIRMED.