Michael JARVIS, Plaintiff,

v.

William D. KNOWLTON and Timothy D.
Eyssen, Individually and as District At-
torneys of Clay and Wichita Counties,
Texas, Respectively, Jointly and Sever-
ally, Defendants.

Civ. A. No. CA–7–78–26.

United States District Court,
N. D. Texas,
Wichita Falls Division.

Oct. 12, 1978.

James B. Ammons, Donald G. Martin, Rosendo Rodriguez, Jr., Wichita Falls, Tex., for plaintiff.

Jack Banner, Wichita Falls, Tex., for defendants.

## MEMORANDUM OPINION

ROBERT M. HILL, District Judge.

This case involves difficult questions concerning the application of *Younger v. Harris* to a federal action for injunctive relief against two state prosecutions which allegedly violate the Double Jeopardy Clause of the Fifth Amendment, and the scope of protection against multiple prosecutions afforded by the Double Jeopardy Clause. The plaintiff, Michael Jarvis (Jarvis), seeks under 42 U.S.C. Section 1983 to enjoin defendants William D. Knowlton (Knowlton) and Timothy D. Eyssen (Eyssen) from prosecuting indictments charging him with attempted capital murder and attempted murder on the ground that prosecution of these indictments violates the Double Jeopardy Clause of the Fifth Amendment. Defendants filed a Motion to Dismiss based upon *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and the court, holding that motion in abeyance, proceeded to a hearing on the merits on August 15, 1978. For the reasons stated below, the court is of the opinion that defendant Knowlton should be enjoined from further prosecution of the attempted capital murder indictments but that defendants should not be enjoined from further prosecution of the attempted murder indictment.

### Facts

The events giving rise to the crimes with which Jarvis is charged can be simply summarized. Two young boys, Scott Lofgren and Allen Lofgren, were abducted and sexually abused in Wichita Falls, Wichita County, Texas. The abductor drove the boys to adjoining Clay County, Texas, where he threw them from a bridge. The boys survived and on November 13, 1977, Jarvis, a First Lieutenant in the United States Air Force, was arrested and charged with several offenses arising from the abduction.

The events following Jarvis' arrest follow a more complicated path. On November 22, 1977, the Wichita County Grand Jury returned a single count indictment against Jarvis charging him with aggravated sexual abuse of Scott Lofgren. On December 22, 1977, the Clay County Grand Jury returned two single count indictments against Jarvis charging him with attempted capital murder of each of the boys. Eyssen, District Attorney for Wichita County, requested that Roger Towery (Towery), Assistant Criminal District Attorney for Clay County, serve as lead counsel in the prosecution of the Wichita County indictment. Jarvis' present attorneys defended him against the Wichita County prosecution. On March 27, 1978, the morning of the Wichita County trial, defense and prosecution attorneys agreed to dismissal of the indictment for aggravated sexual abuse and to prosecution of Jarvis by information in Wichita County.

Jarvis' attorneys requested that the indictments for attempted capital murder pending in Clay County be consolidated with the charges that would be brought against Jarvis in Wichita County. Knowlton, Criminal District Attorney for Clay County, objected to this request. Pursuant to motion by Jarvis' attorneys, the Wichita County court then ordered consolidation of all uncharged offenses which occurred in Wichita County in connection with the abduction of the two boys. Accordingly, Jarvis underwent a jury trial on an information charging two counts of aggravated kidnapping of each boy and one count of aggravated sexual abuse of Scott Lofgren. The jury found Jarvis guilty on all three counts and imposed concurrent eight year sentences, but recommended that the sentences be probated. On April 5, 1978, the Wichita County court entered judgment pursuant to the verdict.

The scene now shifts to Clay County where Jarvis still had two indictments for attempted capital murder pending against him. At a pretrial hearing on April 18, 1978, Jarvis' attorneys moved for dismissal

of both indictments on the ground that double jeopardy, carving and related doctrines barred prosecution of the indictments after Jarvis' three convictions in Wichita County. Towery represented the state at the hearing. Prior to the hearing, Rocindo Rodriguez, an attorney for Jarvis, showed Towery a copy of a recent Supreme Court decision considered favorable to defendant's Motion, *Harris v. Oklahoma*, 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977). Towery responded by taking a copy of an attempted capital murder indictment and crossing out the allegation that the attempted murder occurred during the course of a kidnapping, and by stating that he did not believe that *Harris* would bar an attempted murder charge. Towery further stated that Knowlton was in the grand jury room at that very moment presenting an indictment against Jarvis for attempted murder.

The grand jury that day returned an indictment charging Jarvis with two counts for attempted murder of each boy. The Clay County trial judge also denied Jarvis' motion to dismiss the attempted capital murder indictments. Knowlton testified at the hearing on August 15, 1978, before this court that when he presented the indictment for attempted murder to the grand jury he did not believe that double jeopardy, carving, or related doctrines barred the two attempted capital murder indictments. He further testified that he would not prosecute any of the Clay County indictments if he did not believe that he could procure longer sentences than those meted out by the Wichita County jury.

For conviction of attempted capital murder, the Texas Penal Code imposes a punishment of imprisonment for life, or for a term not more than 99 years of less than 5 years. Texas Penal Code Sections 15.01(d), 19.03, 12.04(a), 12.32. Conviction of attempted murder can result in a sentence ranging from 2 to 20 years. Texas Penal Code Sections 15.01(d), 19.02, 12.04(a), 12.33. Currently, Jarvis is charged in Clay County with two single count indictments for attempted capital murder and one two count indictment for attempted murder.

## Discussion

At the outset, the court is confronted with the issue whether *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) and its progeny dictate that it not enjoin the state prosecutions pending against Jarvis in Clay County. *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975) establishes that "*Younger* standards must be met to justify federal intervention in a state judicial proceeding as to which a losing litigant has not exhausted his state appellate remedies." Since Jarvis may appeal the Clay County trial court's rejection of his double jeopardy claim in the Texas Court of Criminal Appeals should he be convicted on the attempted capital murder indictments, *Huffman, supra*, forbids this court from enjoining prosecution of the attempted capital murder indictments unless Jarvis can meet the *Younger* standards. Jarvis has not raised double jeopardy as a defense to the Clay County attempted murder indictment. Therefore, his request for injunctive relief from prosecution of the attempted murder charges comes squarely within *Younger* and may be granted only if Jarvis can meet the *Younger* standards.

■ The *Younger* standards for enjoining a pending state criminal prosecution consist of proof by the plaintiff that the prosecution is in bad faith, or intended to harass the plaintiff, or that other "extraordinary circumstances" are present "in which the necessary irreparable injury can be shown even in the absence of the usual prerequisites of bad faith and harassment." *Younger, supra*, 401 U.S. at 53, 91 S.Ct. at 755. The *Younger* standards issue from

"a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." *Younger, supra*, 401 U.S. at 44, 91 S.Ct. at 750.

Jarvis contends vigorously that defendants have exercised bad faith and have harassed him in the prosecution of the Clay County indictments. The court will treat separately Jarvis' contentions of bad faith and harassment with regard to prosecution of the attempted capital murder indictments and of the attempted murder indictment.

## I. Attempted Capital Murder Indictments

### A. Bad Faith and Harassment

Jarvis primarily bases his allegation of bad faith on the part of defendant prosecutors on the fact that they persist in the prosecution of the attempted capital murder indictments "without a reasonable expectation of obtaining . . . valid conviction(s)" because they know, or should know, that the Wichita County convictions for aggravated kidnapping preclude that prosecution under double jeopardy, carving, and related doctrines. *Kugler v. Helfant,* 421 U.S. 117, 126, 95 S.Ct. 1524, 44 L.Ed.2d 15 n.6 (1975). Initially, defendants object to Jarvis' formulation of the degree of expectation of conviction contemplated by *Younger,* contending that bad faith entails the lack of any expectation of conviction at all, and not the lack of a reasonable expectation. Defendants would relegate the Supreme Court's formulation in *Kugler, supra,* to dictum and urge that *Perez v. Ledesma,* 401 U.S. 82, 85, 91 S.Ct. 674, 677, 27 L.Ed.2d 701 (1971), accurately formulates a bad faith prosecution as one undertaken "without hope of obtaining a valid conviction."

In practice, the Fifth Circuit has not required a showing of an unquestionable legal bar to prosecution before upholding a finding of bad faith. *See Shaw v. Garrison,* 467 F.2d 113, 118 (5th Cir. 1972) *cert. denied,* 409 U.S. 1024, 93 S.Ct. 467, 34 L.Ed.2d 317 (1972); *Duncan v. Perez,* 445 F.2d 557, 559 (5th Cir. 1971) *cert. denied,* 404 U.S. 940, 92 S.Ct. 282, 30 L.Ed.2d 254 (1971). In upholding injunctive relief against state criminal prosecutions, *Shaw, supra,* and *Duncan, supra,* relied on evidence that the prosecutions brought against the plaintiffs were rarely, if ever, brought against others in the same or similar circumstances. If defendants'

formulation of prosecutorial bad faith were followed, then a court would rarely find bad faith, even in the worst of circumstances.

■ The prosecutor's expectation of conviction is one circumstance to be considered with all of the circumstances before the court in deciding whether the plaintiff has shown bad faith or harassment on the part of the prosecutor. *See Williams v. Brasea, Inc.,* 549 F.2d 977 (5th Cir. 1977). A prosecutor may have a mistaken belief about the law or may fail to anticipate a departure from settled law and still bring a prosecution in good faith. *Williams, supra,* 549 F.2d at 976–977. "Bad faith", then admits of a wide latitude for prosecutorial discretion but does not tolerate exceptional departures from customary prosecutorial practices under circumstances that show a motivation for the departure unrelated to the discharge of the prosecutor's official duties. *See Shaw, supra,* 467 F.2d at 117–119; *Duncan, supra,* 445 F.2d at 559–560. With these general observations in mind, the court turns to the case at hand.

■ The court's conclusion, *infra,* that prosecution of the attempted capital murder indictment violates the Double Jeopardy Clause does not, of itself, warrant a finding of bad faith. Indeed, the court's conclusion rests on an interpretation of a question that the Supreme Court reserved in a recent opinion, *Jeffers v. United States,* 432 U.S. 137, 151, 97 S.Ct. 2207, 53 L.Ed.2d 168 n.17 (1977). Defendants' construction of the law of double jeopardy has, if anything, greater merit than the prosecutor's legal conclusion in *Williams, supra,* and the *Williams* court found that the prosecutor's "mistaken belief" about the law did not amount to bad faith.

■ Jarvis urges that, even if Knowlton did not show bad faith by running afoul of the Double Jeopardy Clause, the Texas doctrine of carving clearly prohibits the prosecution for attempted capital murder, and prosecution in the face of that doctrine amounts to bad faith. The court need not decide whether the carving doctrine applies to the challenged prosecution since it is

purely a matter of state law. The court does find that there is a substantial question whether the carving doctrine is applicable, *see Douthit v. State*, 482 S.W.2d 155 (Tex.Cr.App.1971), and that prosecution of the attempted capital murder indictment in the face of the carving doctrine is not so futile as to necessitate a finding of bad faith.

Even assuming that Knowlton had a reasonable expectation of obtaining a valid conviction on the attempted capital murder indictments, Jarvis contends that Knowlton's failure to dismiss those indictments when he procured the attempted murder indictment evidences bad faith. There is no evidence as to the frequency with which Knowlton, or Texas district attorneys in general, maintain two indictments against a defendant when one involves a lesser included offense of the other. Knowlton admits that he sought the attempted murder indictment out of concern that a court would accept Jarvis' plea of double jeopardy to the attempted capital murder indictments. Since there is no statute of limitations for attempted murder, Texas Code of Criminal Procedure, arts. 12.03(a), 12.01(1), it is not immediately apparent why Knowlton rushed to seek the attempted murder indictment. He testified that he did not want to expose the two young victims to a second trial if an appellate court overturned convictions for attempted capital murder on double jeopardy grounds. However, concurrent trials on all three indictments, a theoretical possibility until a verdict is reached on an attempted capital murder indictment or on the attempted murder indictment,[1] would expose the victims to multiple trials, the very danger Knowlton seeks to avoid.

Knowlton acknowledges that he will prosecute only one offense. (Defendant's Ex-

hibit at 58). If he chooses to prosecute the attempted capital murder indictment, he will have done nothing to minimize the risk of multiple trials, and if he chooses to prosecute the attempted murder indictment, he will not have justified why he maintained the attempted capital murder indictment.

Knowlton further explains that he procured the attempted murder indictment because the Grand Jury was reaching the end of its current term, and would not meet again for 90 days, so that "in the event that there were problems with the (attempted capital murder) indictment," there would be no delay in prosecuting the attempted murder indictment. (Defendant's Exhibit at 50). In effect, Knowlton may now postpone the election of which offense to prosecute until the very eve of trial on one of the offenses. Even this explanation weakens when one considers that Knowlton could always prosecute attempted murder as a lesser included offense under the attempted capital murder indictments. See Texas Code of Criminal Procedure, arts. 37.08, -.09, -.14. Knowlton could have awaited the trial judge's ruling on Jarvis' plea of double jeopardy presented on April 18, 1978, and, if the ruling had been adverse, he could have procured an attempted capital murder indictment before the current Grand Jury term ended on April 30. If he had awaited the favorable trial court ruling, he would not have needed an attempted murder indictment.

It appears that Knowlton procured the attempted murder indictment because he felt that such a course was the most convenient way to maintain an indictment against Jarvis in the event that the state trial judge dismissed the attempted capital murder indictments. The court may not find "bad faith" or "harassment" merely by

---

1. The trials on these indictments could have varying consequences. Double jeopardy would not bar an attempted murder prosecution if Jarvis was acquitted on an attempted capital murder indictment, *see In re Nielsen*, 131 U.S. 176, 187–188, 9 S.Ct. 672, 33 L.Ed. 118 (1889), unless collateral estoppel applied according to the principles of *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). In

any event, the Texas doctrine of carving would likely bar the prosecution. A prior conviction or acquittal on the attempted murder indictment or prior conviction on an attempted capital murder indictment would trigger double jeopardy. *Harris v. Oklahoma*, 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977); *Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977).

second-guessing Knowlton's judgment absent evidence of an improper motive. There is no evidence that Knowlton considered anything other than the faithful discharge of his office when he procured the attempted murder indictment. He did not stand to benefit financially from the prosecution. Nor did he bear a personal grudge against Jarvis or seek excessive publicity in connection with his prosecution. *See Shaw, supra,* 467 F.2d at 116–118.

Further, the state has a strong interest in prosecuting Jarvis to the full extent for the crimes he allegedly committed in connection with the abduction of the two boys. *See Williams, supra,* 549 F.2d at 977; *Duncan, supra,* 445 F.2d at 559. Knowlton's debatable exercise of judgment in pursuit of that strong state interest does not support a finding of "bad faith" or "harassment."

Jarvis points to other circumstances which allegedly evidence bad faith. He contends that the collaboration between Knowlton and Eyssen after Jarvis' arrest was calculated to maximize the opportunities for prosecution of him. In furtherance of defendant prosecutors' scheme, Jarvis urges, Knowlton resisted his efforts to consolidate all offenses arising from the abduction before the Wichita County court. Their scheme allegedly bore fruit when Jarvis received a light sentence for the Wichita County conviction and defendants then fell back on the Clay County indictments to obtain a stiffer sentence. Any decision that Knowlton and Eyssen may have reached concerning the separate prosecution of Jarvis for separate offenses committed in Clay and Wichita Counties does not reflect bad faith, but the reasonable exercise of discretion that Texas law commits to state prosecutors. Defendants did not violate any state law by refusing to consolidate all charges against Jarvis.

Further, Knowlton did not, as Jarvis contends, violate the Wichita County Court's Order of Consolidation when he obtained the attempted murder indictment because that Order extended only to offenses committed in Wichita County and the attempted murder allegedly took place entirely in Clay County. Knowlton explains his refusal to consolidate by concern for the jury confusion inherent in the prosecution of several offenses at one trial, and Jarvis has not shown any basis for defendant prosecutors' decisions on consolidation relating to personal or financial considerations.

Eyssen and Knowlton did not exercise "bad faith" by following a lawful course that seeks to impose the maximum sentence on Jarvis for the offenses connected with the abduction. *Younger v. Harris* is not so fragile a doctrine that every lawful prosecutorial decision adverse to a criminal defendant manifests "bad faith" and allows a federal court to enjoin a pending state proceeding.

Finally, Jarvis contends that Knowlton's request for an order requiring him to submit to a second psychiatric examination shows "bad faith." The purpose of the motion, he argues, must be to bolster the testimony of the prosecution's psychiatrist that Jarvis is sane, because his unconvincing testimony as to Jarvis' sanity was responsible for his light punishment by the Wichita County jury. Prior to the Wichita County trial, the state's psychiatrist had inquired into Jarvis' mental state for the entire period of the abduction pursuant to a court order. Jarvis does not substantiate his inference of bad faith from the prosecution's efforts to conduct a second psychiatric examination. For all the court knows, the prosecution may have genuine doubts about Jarvis' sanity, or may feel that the first examination was poorly conducted. The court does not find "bad faith" from the prosecution's mere request that Jarvis submit to a second psychiatric examination.

The court is of the opinion that the circumstances surrounding the attempted capital murder prosecution of Jarvis, considered individually and as a whole, do not show "bad faith" or "harassment" on the part of Knowlton or Eyssen.

**B. Other Extraordinary Circumstances**

The court's inquiry under *Younger* does not end with a finding of no "bad faith" or "harassment." Other extraordinary cir-

cumstances which show the degree of irreparable injury required by *Younger* will justify federal intervention in a pending state criminal prosecution. The court is of the opinion that Jarvis' allegation that prosecution of the attempted capital murder indictments violates the Double Jeopardy Clause presents such extraordinary circumstances.

The Supreme Court has left largely undefined the scope of "other extraordinary circumstances." *Kugler v. Helfant*, 421 U.S. 117, 124, 95 S.Ct. 1524, 44 L.Ed.2d 15 n.4 (1975). *Younger* provided that a federal court may interfere with a state criminal prosecution if the plaintiff can show irreparable injury " 'both great and immediate'. " *Younger, supra*, 401 U.S. at 46, 91 S.Ct. 746. The *Younger* court expressed that the cost, anxiety, and inconvenience of having to defend against a *single criminal prosecution* did not constitute irreparable injury that is great or immediate. *Younger* also established that an allegation that the statute under which the plaintiff is prosecuted has a "chilling effect" on the exercise of first amendment rights because it is unconstitutionally vague or overboard does not reach the level of great and immediate irreparable injury.

In *Wooley v. Maynard*, 430 U.S. 705, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977), the Supreme Court found exceptional circumstances justifying federal interference with the enforcement of a state criminal statute. In that case, Maynard, a Jehovah's Witness, refused to comply with a New Hampshire statute which required that noncommercial vehicles bear license plates embossed with the state motto, "Live Free or Die." After paying fines and completing a sentence imposed pursuant to three successive convictions for violations of the statute, Maynard sought to enjoin enforcement of the statute against him in federal court. The Supreme Court held that Maynard's claim did not fall within the *Younger* doctrine. It nevertheless required a showing of exceptional circumstances to justify injunctive relief because "(s)uch a result seriously impairs the state's interest in enforcing its criminal laws, and implicates the concerns for federalism which lie at the heart of *Younger.*"

*Wooley, supra*, 430 U.S. at 712, 97 S.Ct. at 1434. The court found the requisite exceptional circumstances in the deterrent effect of the threat of prosecution under the New Hampshire statute on Maynard's "ability to perform the ordinary tasks of daily life which require an automobile." *Id.*

The Fifth Circuit recently found exceptional circumstances justifying federal injunctive relief where *Younger* did not apply but where the policies of *Younger* were implicated. In *Ealy v. Littlejohn*, 569 F.2d 219 (5th Cir. 1978), witnesses before a state grand jury sought expunction of portions of the transcript of the grand jury hearing covering testimony given in violation of their First Amendment rights to free speech and association. The court found exceptional circumstances in the witness' ongoing fear that state or federal officials would prosecute them on the basis of information revealed at the grand jury hearing in violation of their First Amendment rights, and in the chilling effect on the exercise of those rights caused by the threat of prosecution. *Ealy, supra*, 569 F.2d at 234–235.

In *Gilliard v. Carson*, 348 F.Supp. 757 (M.D.Fla.1972), a federal district court enjoined certain municipal court prosecutions of a class of indigent citizens who were denied the right to appointment of counsel. Even though *Younger* stood squarely in the way of the court's action, it held that it granted injunctive relief consistent with the policies of *Younger* because the plaintiff class faced imminent danger of confinement if the injunction did not issue. The court noted that habeas corpus relief was an inadequate alternative remedy because members of the class would suffer great and irreparable injury from confinement before relief could issue and many class members would have served their sentences before habeas corpus relief became available. *Gilliard, supra*, 348 F.Supp. at 762.

The Supreme Court did not find the requisite injury, on the other hand, when a plaintiff challenged the constitutionality of certain Illinois attachment procedures, even

though pursuant to those procedures the plaintiff had been deprived of the use of certain property. *Trainor v. Hernandez,* 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977). A federal district court similarly held that the temporary detention of films for preservation as evidence in a prosecution under a challenged Texas obscenity statute did not constitute "an extraordinary circumstance" justifying federal injunctive relief. *Southland Theatres, Inc. v. Butler,* 364 F.Supp. 494, 496–97 (W.D.Tex.1973).[2]

■ The court draws the general conclusion from these cases that the plaintiff who seeks relief from the deprivation of a liberty interest; *e. g.,* imminent imprisonment or the use of an automobile, or from a concrete and significant interference with his First Amendment rights, stands a greater chance of satisfying the *Younger* standards than a plaintiff who seeks relief from temporary interference with a property right, or who asserts a speculative restraint on the exercise of First Amendment rights.

■ Guided by the principles of *Younger* and its progeny, the court now turns to the issue whether Jarvis' claim of double jeopardy creates "an extraordinary pressing need for immediate federal equitable relief." *Kugler v. Helfant,* 421 U.S. 117, 124–125, 95 S.Ct. 1524, 1531, 44 L.Ed.2d 15 (1975).

In *Brown v. Ohio,* 432 U.S. 161, 165, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977) the Supreme Court stated that "the Fifth Amendment double jeopardy guarantee serves principally as *a restraint on courts and prosecutors* [emphasis added]." Recently, the Supreme Court stated that a fundamental basis for the Double Jeopardy Clause is the "idea . . . 'that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an

alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity . . ..'" *Crist v. Bretz,* 437 U.S. 28, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978).

Jarvis seeks injunctive relief from an imminent state criminal trial which he claims will subject him to an attempt to convict him a second time for the same offense. Even should the Texas Court of Criminal Appeals reverse a conviction of Jarvis for attempted capital murder on the ground of double jeopardy, he will have suffered the "embarrassment, expense, and ordeal" of undergoing a second trial for the same offense, the very harm that the Double Jeopardy Clause is designed to avoid. The court is of the opinion that Jarvis has shown that, absent federal injunctive relief, he will suffer irreparable injury both great and immediate.

A second criminal trial poses a concrete danger to Jarvis, in contrast to the "chilling effect" posited by the plaintiffs in *Younger v. Harris.* Furthermore, enjoining the attempted capital murder prosecution will effectively eliminate the "embarrassment, expense, and ordeal" that Jarvis would otherwise suffer; whereas the *Younger* court concluded that federal injunctive relief would not satisfactorily eliminate the chilling effect of the statute therein challenged as unconstitutionally vague. This case is distinguishable from *Trainor v. Hernandez, supra,* because undergoing a second trial for the same offense involves greater injury than a temporary restraint upon the use of certain property. Jarvis faces an imminent trial which will subject him to a deprivation of liberty interests significantly greater than the use of an automobile, *see Wooley v. Maynard, supra,* liberty interests comparable to freedom from imprisonment, *see Gilliard v. Carson, supra.*

**2.** The force of the *Southland Theatres* court's *Younger* finding is undercut by another finding that the plaintiff did not suffer "irreparable injury," much less great and immediate irreparable injury, because the prosecuting attorney had made available for copying the confiscated films and had not ordered the closing of plaintiff's theatre. Furthermore, the court ultimate-

ly ordered consolidation of the case with others pending before a three-judge panel and did not dismiss the suit on the basis of its holding. The three-judge court remanded *Southland Theatres* to the original trial court in order to make *Younger* findings in accordance with its opinion. *Universal Amusement Co. v. Vance,* 404 F.Supp. 33 (S.D.Tex.1975).

The state remedies available to Jarvis are inadequate to avoid the irreparable injury that he will suffer in undergoing a second trial. *See Trainor v. Hernandez*, 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977). The Texas Code of Criminal Procedure does not provide for interlocutory appeal from the denial of a pre-trial motion. *See* T.C. C.P. art. 44.08. Therefore, Jarvis has no means under Texas law of avoiding trial on the attempted capital murder indictment because the Clay County Court has denied his plea of double jeopardy and he cannot raise his plea in the Texas Court of Criminal Appeals until after a trial and conviction.

The court is of the opinion that the *Younger* doctrine does not bar federal injunctive relief from the attempted capital murder prosecution of Jarvis because he has shown "extraordinary circumstances" which warrant federal intervention.

## II. *Attempted Murder Indictment*

▮ Jarvis contends that Knowlton procured the attempted murder indictment in "bad faith" because he submitted it to the grand jury for the sole purpose of circumventing an expected ruling that double jeopardy barred prosecution of the attempted capital murder indictment. The flaw in Jarvis' argument is that dismissal of the attempted capital murder indictment for violation of the Double Jeopardy Clause would not preclude prosecution of the lesser included offense of attempted murder absent a specific finding that double jeopardy barred that prosecution. *Cf. Harris v. Oklahoma*, 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977). Knowlton could reasonably expect that double jeopardy would not apply to a charge of attempted murder, and cannot be faulted for correcting a possible mistake in bringing the attempted capital murder indictment. To do otherwise would be to shirk his duty as a prosecutor, not to act in "bad faith." The court is of the opinion that defendants did not

bring the attempted murder indictment in bad faith or for purposes of harassing Jarvis.

Jarvis claims that he will suffer the same "great and immediate" irreparable injury from prosecution of the attempted murder indictment as from prosecution of the attempted capital murder indictments. However, he has not availed himself of the opportunity to present his constitutional claims to the Clay County court at a pre-trial hearing. Since a favorable ruling at a pre-trial hearing would avoid the adverse consequences to Jarvis of a trial on the attempted murder indictment,[3] the court is of the opinion that Jarvis has an adequate state remedy for the injury he alleges. *See Juidice v. Vail*, 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977); *Trainor v. Hernandez*, 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977). Therefore, the doctrine of *Younger v. Harris* prohibits this court from enjoining the prosecution of the attempted murder indictment.

It follows from the above discussion that the court must consider only whether the attempted capital murder prosecution violates the Double Jeopardy Clause.

## III. *Double Jeopardy—Attempted Capital Murder*

Jarvis premises his Section 1983 claim for injunctive relief from the attempted capital murder prosecution on a violation of the Double Jeopardy Clause of the Fifth Amendment. He contends that his conviction for aggravated kidnapping in Wichita County should bar prosecution of him for attempted capital murder in Clay County because they are the "same offense" for purposes of the Double Jeopardy Clause.

Under the Texas Penal Code, a person commits "aggravated kidnapping" if "he intentionally or knowingly abducts another person with the intent to" (inter alia) "inflict bodily injury on him or violate or abuse

---

**3.** Although prosecution of the attempted murder indictment prior to the selection of a jury and the presentation of evidence may tax Jarvis' mental and economic resources, it is the

second trial for the same offense that threatens irreparable injury of a magnitude that meets the *Younger* standards. *Cf. Crist v. Bretz*, 437 U.S. 28, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978).

him sexually." Texas Penal Code Section 20.04(a)(4). The information under which Jarvis was convicted in Wichita County charged him with two counts of aggravated kidnapping for the abductions of Scott Lofgren and Allen Lofgren with intent to violate or abuse each one sexually. (Defendant's Exhibit 1 at 72).

A person commits "attempted capital murder" under the Texas Penal Code if he attempts to cause the death of an individual, *inter alia,* "in the course of committing . . . kidnapping." Texas Penal Code Sections 15.01, 19.03(a)(2), 19.02(a)(1). The two Clay County indictments charging Jarvis with the attempted capital murder of each boy allege the offenses as above defined.

At first blush, Jarvis' conviction for aggravated kidnapping would not appear to bar, under the Double Jeopardy Clause, prosecution of the attempted capital murder indictments. This is borne out by the Supreme Court's decision in *Brown v. Ohio,* 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977), which adopted the test announced in *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), to determine whether a conviction for one offense would bar a second prosecution under the Double Jeopardy Clause. *Blockburger, supra,* decided whether convictions on two counts alleging violations of federal narcotics law were convictions for separate offenses so that separate punishments could be imposed for each conviction. The rule of decision adopted by the *Blockburger* court provides that "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not." *Blockburger, supra,* 284 U.S. at 304, 52 S.Ct. at 182.

According to a literal application of the *Blockburger* test, Jarvis' convictions for aggravated kidnapping are not convictions for the "same offense" as attempted capital murder for purposes of the Double Jeopardy Clause. The offense of aggravated kidnapping requires proof of intent to sexually abuse the victim, proof of which attempted capital murder does not require, and attempted capital murder requires proof of attempted murder, proof of which aggravated kidnapping does not require. Although both offenses require proof of kidnapping, "the *Blockburger* test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes. . . ." *Iannelli v. United States,* 420 U.S. 770, 785, 95 S.Ct. 1284, 1294, 43 L.Ed.2d 616 n.17 (1975) (cited in *Brown v. Ohio,* 432 U.S. 161, 166, 97 S.Ct. 2221, 2226, 53 L.Ed.2d 187 (1977)).

*Brown v. Ohio, supra,* 432 U.S. at 166, 97 S.Ct. at 2226 n.6 recognizes, however, that "the *Blockburger* test is not the only standard for determining whether successive prosecutions impermissibly involve the same offense." In a case decided the same day, the Supreme Court suggested an alternative rationale for the holding in *Brown v. Ohio. Jeffers v. United States,* 432 U.S. 137, 151, 97 S.Ct. 2207, 2216, 53 L.Ed.2d 168 n.17 (1977). *Brown v. Ohio* held that conviction for a lesser included offense precludes, under the Double Jeopardy Clause, prosecution for the greater offense because, by definition, a lesser included offense does not require proof of a fact that the greater offense does not require, and therefore, the *Blockburger* test is not satisfied. The alternative rationale suggested in *Jeffers* is that "the defendant is necessarily placed twice in jeopardy on the lesser offense. The risk of conviction on the greater means nothing more than a risk of conviction upon proof of all elements of the lesser plus proof of the additional elements needed for the greater." *Jeffers, supra,* 432 U.S. at 151, 97 S.Ct. at 2216 n.17. This case requires the court to decide the implications of this theory, a task left for another day by the *Jeffers* court.

█ Under Texas law, "kidnapping" is a lesser included offense of "aggravated kidnapping." Texas Code of Criminal Procedure, art. 37.09; Texas Penal Code, Sections 20.03, 20.04. Article 37.08 of the Texas Code of Criminal Procedure provides that "[i]n a prosecution for an offense with less-

er included offenses, the jury may find the defendant not guilty of the greater offense, but guilty of any lesser included offense." Therefore, in prosecuting Jarvis for aggravated kidnapping, the defendant Eyssen could have obtained a conviction for kidnapping. Article 37.09, literally read, provides that kidnapping is also a lesser included offense of attempted capital murder as defined in the indictments charging Jarvis, because, in order to prove attempted capital murder as charged, Knowlton is required to prove all the facts necessary to prove kidnapping. *See Graves v. State,* 539 S.W.2d 890, 892 (Tex.Cr.App.1976). Hence, under article 37.08, prosecution of attempted capital murder would amount to a second prosecution of Jarvis for kidnapping in violation of the Double Jeopardy Clause.[4]

A Texas Court of Criminal Appeals decision, *Woodkins v. State,* 542 S.W.2d 855 (Tex.Cr.App.1976) casts doubt on this analysis, however. The *Woodkins* court held that a trial judge did not commit error when he refused to instruct the jury that it might find a defendant charged with capital murder—murder committed during the course of robbery—guilty of the lesser included offense of robbery. However, the court could not have construed the current article 37.09 in reaching its decision because that provision became effective as to offenses occurring on or after January 1, 1974, and the offense in question before the *Woodkins* court occurred on November 21, 1973. Acts 1973, 63rd Legis., ch. 399, Sections 4, 6, p.

883. Inexplicably, *Woodkins* cites two cases which construed the current article 37.09, *Graves v. State,* 539 S.W.2d 890 (Tex.Cr. App.1976), *Day v. State,* 532 S.W.2d 302 (Tex.Cr.App.1975), and which do not support the court's holding.[5] *Woodkins, supra,* 542 S.W.2d at 858. The court's holding, furthermore, is probably supportable under the superceded article 37.09. *See Day v. State,* 532 S.W.2d 302, 310, 312–315 (Tex.Cr. App.1976) (opinion on rehearing).

■ Even in the unlikely event that *Woodkins* did construe the current article 37.09 such that kidnapping is not a lesser included offense of attempted capital murder, the court is of the opinion that the Double Jeopardy Clause nevertheless bars prosecution of the attempted capital murder indictments. *Jeffers v. United States, supra,* 432 U.S. at 151, 97 S.Ct. at 2216 n.17, does not require that prosecution of the greater offense must actually expose a defendant to the risk of a second conviction for the lesser included offense in order for Double Jeopardy to apply. Rather, it suggests that when the elements of the lesser included offense must be proved again in order to prove the greater offense, Double Jeopardy should apply. In referring to footnote 6 of *Brown v. Ohio,* 432 U.S. 161, 166, 97 S.Ct. 2221, 2226, 53 L.Ed.2d 187 (1977), the *Jeffers* court may have suggested an extension of the collateral estoppel principles of *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), from prior acquittals to prior convictions in the limited

---

**4.** That the prosecutor, or defense attorney, may not request submission of the lesser included offense to the jury makes no difference with respect to application of the Double Jeopardy Clause in these circumstances. By virtue of article 37.08, a Texas trial court automatically has jurisdiction to proceed to judgment on a lesser included offense once it has jurisdiction over the greater offense. *Day v. State,* 532 S.W.2d 302 (Tex.Cr.App.1976). The relevant consideration under the Double Jeopardy Clause is whether a defendant must twice undergo the "risk of conviction" for the same offense. *Jeffers v. United States,* 432 U.S. 137, 151, 97 S.Ct. 2207, 2216, 53 L.Ed.2d 168, 180 n.17 (1977). Under article 37.08, Jarvis must undergo the risk of conviction for kidnapping during the prosecution of an attempted capital murder indictment until after the presentation of evi-

dence at trial, when the prosecutor decides whether to request submission of the lesser included offense of kidnapping to the jury. Texas Code of Criminal Procedure, art. 36.15.

**5.** Conceivably, the *Woodkins* court could have relied upon language in *Day* to conclude that the relationship between robbery and capital murder was so tenuous that to convict a defendant charged with capital murder of robbery would violate due process. *Day v. State,* 532 S.W.2d 302, 310, 313 n.5 (Tex.Cr.App.1976) (opinion on rehearing). It is doubtful, however, that the court decided the complicated due process question without any discussion, particularly since, in *Woodkins,* the defense attorney, and not the prosecutor, requested the lesser included offense charge.

circumstance when the elements of proof common to two prosecutions form a separate offense. Without such a limitation, such an extension would threaten the viability of the *Blockburger* test, which applies "notwithstanding a substantial overlap in the proof offered to establish the crimes." *Iannelli v. United States*, 420 U.S. 770, 785, 95 S.Ct. 1284, 1294, 43 L.Ed.2d 616 n.17 (1975). Since defendant prosecutors must twice prove the elements of kidnapping in order to obtain convictions for aggravated kidnapping and attempted capital murder, the Double Jeopardy Clause should bar prosecution of the attempted capital murder indictments.

■ Policy considerations support this conclusion. If Eyssen had prosecuted Jarvis for kidnapping and obtained a conviction, then the Double Jeopardy Clause would clearly preclude prosecution of the attempted capital murder indictments. *Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977). By prosecuting Jarvis for aggravated kidnapping, Eyssen does not assume any greater burden of proof because he may still obtain a conviction for the lesser included offense of kidnapping. Should this court not uphold Jarvis' double jeopardy claim, Eyssen, by exposing Jarvis to the risk of greater punishment for conviction of aggravated kidnapping, *see* Texas Penal Code, Sections 20.03, 20.04, 12.32, 12.-33, will have preserved Knowlton's opportunity to prosecute him for attempted capital murder and to remedy the failure of the aggravated kidnapping prosecution to produce a stiffer sentence.

The Fifth Circuit, in *Johnson v. Estelle*, 506 F.2d 347, 352 (5th Cir. 1975), warned that the Double Jeopardy Clause should not fall victim to the manipulation by prosecutors of modern penal codes, which spin out "multitudinous criminal charges . . . from the same incident." Knowlton and Eyssen may not avoid the effect of the Double Jeopardy Clause by spinning out of Jarvis' single continuous act of kidnapping as many first-degree felony prosecution as they can find in the Texas Penal Code.

It is therefore ORDERED that:

(1) William D. Knowlton, Criminal District Attorney for Clay County, Texas, and any persons possessed with his authority, are enjoined from prosecuting the attempted capital murder indictments returned against Michael Jarvis in Clay County, Texas; and

(2) All other relief sought by Plaintiff is denied.

## ORDER

The court hereby supplements the Memorandum Opinion of October 10, 1978, to set forth the grounds upon which the court has denied plaintiff an award of attorneys fees sought under 42 U.S.C. § 1988. Section 1988 provides, in pertinent part, that "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." Plaintiff has sued defendant prosecutors both in their individual and official capacities. Insofar as plaintiff seeks attorneys fees from defendants individually, they enjoy absolute immunity from recovery of those fees under *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). *See Universal Amusement Co. v. Vance*, 559 F.2d 1286, 1300–1301 (5th Cir. 1977), *rehearing en banc granted*. Insofar as plaintiff seeks attorneys fees from defendants in their official capacities, the court, in its discretion, declines to award attorneys fees in this case.

In so deciding, the court has taken into consideration the following factors. First, this case does not involve a claim of discrimination on the basis of race, sex, or other similar classification. In *Henderson v. Fort Worth Independent School Dist.*, 574 F.2d 1210 (5th Cir. 1978), the Fifth Circuit recognized that Congress' overriding concern in enacting 42 U.S.C. § 1988 was "to encourage individuals, particularly members of racial minorities, to seek relief from invidious discrimination based on race, sex, religion, wealth, and other inherently offensive criteria." Since plaintiff's claim is founded upon a violation of the Double Jeopardy Clause, and does not involve in-

vidious discrimination, the court does not consider his request for attorney's fees under § 1988 worthy of great weight. Second, defendant prosecutors did not defend this suit in bad faith, but contested what were essentially new issues of law. The court does not treat defendants' good faith as a bar to recovery under § 1988, but, in accordance with *Henderson, supra,* considers it a factor militating against their recovery. Third, plaintiff prevailed only partially on his claim for relief, as the court did not enjoin the attempted murder prosecution. For these reasons, the court is of the opinion that plaintiff's request for attorney's fees under 42 U.S.C. § 1988 should be denied.

It is so ORDERED.